United States Court of Appeals,

Eleventh Circuit.

No. 95-6432.

Patrice D. WILLIAMS, Plaintiff-Appellee,

v.

ALABAMA STATE UNIVERSITY, Board of Trustees of Alabama State University, Defendants,

T. Clifford Bibb, individually and in his official capacity, Roosevelt Steptoe, Dr., individually and in his official capacity, Alma S. Freeman, Dr., individually and in her official capacity, Defendants-Appellants.

Jan. 6, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-94-A-434-N), W. Harold Albritton, III, Judge.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

The individual defendants in this 42 U.S.C. § 1983 action appeal the district court's order denying their motion to dismiss the claims against them in their individual capacities on grounds of qualified immunity.[1] The district court held that the complaint alleges a violation of a clearly established constitutional right. We reverse.

BACKGROUND[2]

Patrice Williams was employed as an English instructor at

_____

[1]The district court dismissed claims against these defendants in their official capacities on Eleventh Amendment grounds except to the extent that Williams sought prospective injunctive relief. Williams also named Alabama State University and the Board of Trustees as defendants, and all claims against them were dismissed on Eleventh Amendment grounds.

[2]The background facts are taken from the amended complaint.

Alabama State University ("ASU") from 1980 to 1986, and again from 1988 to 1993. In 1990, Williams's request for a promotion was denied. In 1991, Williams's application for tenure was denied, but she was granted a promotion to Assistant Professor. Pursuant to ASU's "up or out" tenure policy, Williams worked her final year at ASU under a temporary contract and received a termination letter in May 1993.

Following her termination, Williams sued Dr. T. Clifford Bibb, Dr. Alma S. Freeman, and Dr. Roosevelt Steptoe in both their individual and official capacities. Williams alleges that the defendants, who hold various administrative positions at ASU, reduced her hours, denied her tenure, and terminated her in retaliation for her constitutionally protected speech. Specifically, Williams contends that the defendants retaliated against her because she criticized a grammar textbook written by Bibb and other faculty members.

The defendants moved to dismiss Williams's complaint on the grounds that they were entitled to qualified immunity and that Williams failed to meet the heightened pleading standard applicable in § 1983 actions against individuals. The district court concluded that Williams's complaint failed to meet the heightened pleading standard, but granted her leave to amend. Williams filed an amended complaint, in which she alleges that (1) she "criticized" the textbook because it contained "numerous substantive grammatical mistakes," (2) she "spoke out against" and "instigated debate" about the use of the textbook, (3) she voiced these concerns to defendant Bibb, the other authors of the book,

and other faculty members, (4) her 1990 request for a promotion was denied by the defendants, (5) Bibb chaired the 1991 tenure committee, and his influence over the committees resulted in the denial of her tenure application, (6) defendant Steptoe signed the letter informing her that her tenure application was denied, and (7) defendants Bibb, Steptoe, and Freeman "approved and authorized" the denial of her tenure application. (R.10 at 3-6). The defendants moved to dismiss the amended complaint, again asserting that they were entitled to qualified immunity and that the amended complaint failed to meet the heightened pleading standard. The district court denied the motion, holding that the amended complaint adequately alleged a violation of Williams's right to free speech, and that further factual development was required before the qualified immunity issue could be resolved. The defendants appeal the district court's denial of their motion to dismiss the claims against them in their individual capacities.

ISSUE ON APPEAL AND STANDARD OF REVIEW

The defendants assert the defense of qualified immunity in a Rule 12(b)(6) motion to dismiss, and they are entitled to qualified immunity at this stage in the proceedings if Williams's amended complaint fails to allege the violation of a clearly established constitutional right.[3] *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Siegert v. Gilley,*

---

[3]Because we conclude that defendants are entitled to qualified immunity, we need not address defendants' contention that Williams's amended complaint fails to meet the heightened pleading standard. We are, however, aided by the greater specificity of Williams's amended complaint in determining whether she alleges the violation of a clearly established right.

500 U.S. 226, 232-33, 111 S.Ct. 1789, 1793-94, 114 L.Ed.2d 277 (1991). Whether the amended complaint alleges a violation of a clearly established right is a question of law, *Ansley v. Heinrich,* 925 F.2d 1339, 1348 (11th Cir.1991);[4] thus, we review *de novo* the district court's order denying the defendants' motion to dismiss. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1539 (11th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

In deciding whether the complaint states a claim, we accept all well-pleaded facts in the complaint as true and draw all inferences in the plaintiff's favor. *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

## DISCUSSION

Qualified immunity shields government officials sued in their individual capacities who act pursuant to discretionary authority "insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have

---

[4]Williams filed a motion to dismiss this appeal for lack of jurisdiction, arguing that the district court's denial of the defendants' motion was not an appealable final decision under *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In *Johnson,* the Supreme Court held that a district court's summary judgment order in a qualified immunity case *based on a question of "evidence sufficiency"* is not an appealable order. *Id.* at ----, 115 S.Ct. at 2156. The purely legal issue raised by defendants on this appeal is part of the core qualified immunity analysis. *See Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir.1996) (distinguishing core qualified immunity issue from evidence sufficiency issue); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (whether violation of clearly established right is alleged is purely legal question). Thus, we have jurisdiction to hear this appeal and Williams's motion to dismiss this appeal is denied.

known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  The question of qualified immunity should be resolved in the defendant's favor on a motion to dismiss if the plaintiff fails to allege the violation of a clearly established constitutional right.  *Siegert,* 500 U.S. at 232-33, 111 S.Ct. at 1793-94.  For a constitutional right to be clearly established so that qualified immunity does not apply, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In determining whether Williams has alleged a violation of a clearly established right, we look to the prevailing First Amendment law at the time of the defendants' alleged conduct. Under that law, a state employer could not retaliate against a state employee for engaging in constitutionally protected speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987);  *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989).  For a public employee's speech to be constitutionally protected, the employee's interest in commenting on matters of public concern must outweigh the employer's interest in promoting efficiency by suppressing the speech.  *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968).  Because the law in this area employs a balancing test rather than a bright-line rule to determine when a public employee's right to free speech is violated, "the employer is entitled to immunity except in the extraordinary case where

*Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989).

In performing the *Pickering* balancing test, a threshold question is whether the employee's speech involves a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The district court erred in holding that, under clearly established law, Williams's alleged speech involves a matter of public concern, thereby triggering First Amendment protection. We have not been provided nor has our research revealed any case holding that a professor's in-house criticism of a particular text is constitutionally protected speech. Decisions addressing analogous issues suggest the law to be otherwise. A professor's criticism of a required course syllabus was held not to be a matter of public concern in *Ballard v. Blount,* 581 F.Supp. 160 (N.D.Ga.1983), *aff'd,* 734 F.2d 1480 (11th Cir.), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984):

> The plaintiff claims that this speech was related to a matter of public concern, since the decision regarding the syllabus would have an eventual, derivative effect on the freshman English students. Taken to its logical conclusion, the plaintiff's argument means that any time a person's speech will have an *effect* on the public, regardless of how small or unlikely that effect may be, that speech relates to a matter of public concern. This was a specific concern of the *Connick* Court, and the Court wisely rejected this identical argument.

581 F.Supp. at 164 (citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). In addition, in *Feldman v. Bahn,* a complaint against university officials who allegedly discharged a professor in retaliation for his accusing a colleague

of plagiarism was dismissed on qualified immunity grounds. 12 F.3d 730 (7th Cir.1993), *cert. denied,* --- U.S. ----, 115 S.Ct. 571, 130 L.Ed.2d 489 (1994).

*Maples v. Martin,* 858 F.2d 1546 (11th Cir.1988), upon which the plaintiff relies, does not clearly establish that plaintiff's speech activities here were of public concern. In *Maples,* we found that plaintiffs' speech involved matters of public concern. But that speech involved much more than just criticism of the curriculum. 858 F.2d at 1553. Plaintiffs also spoke out about inadequate facilities, low faculty to student ratio, poor performance of graduates on a licensing exam, the ability of his department to prepare students for professional careers, and the status of accreditation. *Id.* Unlike the plaintiffs' speech activities in *Maples,* the plaintiff's activities in the present case, as specifically set forth in her amended complaint, do not "directly affect[ ] the public's perception of the quality of education in a given academic system." *Id.* at 1553. Plaintiff's activities more closely "concern[ ] internal administration of the educational system and personal grievances." *Id.* at 1552. Therefore, we hold that whether Williams's activities involved a matter of public concern is not "sufficiently clear that a reasonable official would understand that what he is doing violates" the First Amendment. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

Moreover, defendants are entitled to qualified immunity because the *Pickering* balancing test does not inevitably weigh in Williams's favor. Under *Dartland v. Metropolitan Dade County,* "the

employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." 866 F.2d at 1323. In applying *Pickering,* we must look to whether the employee's interest in commenting on the matters at issue outweigh the employer's interest in promoting efficiency by suppressing the speech. 391 U.S. at 568, 88 S.Ct. at 1734-35. Williams clearly had some interest in speaking about the fitness of the text she was using to teach her students. But, just as clearly, the university had an interest in making efficient academic and administrative decisions. *See Connick,* 461 U.S. at 151, 103 S.Ct. at 1692 ("[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.") (*quoting Arnett v. Kennedy,* 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part)). Given these competing interests, we cannot say that the *Pickering* balancing test inevitably weighs in Williams's favor. *Dartland,* 866 F.2d 1321.

For these reasons, we conclude that defendants in their individual capacities are entitled to qualified immunity. The order of the district court denying qualified immunity to the defendants is reversed, and this case is remanded to the district

court with instructions to enter judgment for defendants on the §

1983 damage claims against them in their individual capacities.

REVERSED and REMANDED.