KYLE K., Larry K., Personally, et al., Plaintiffs-Appellees,

v.

Maggie CHAPMAN, in her individual capacity, Larry Foston, in his individual capacity, Defendants-Appellants.

No. 99-11048.

United States Court of Appeals,

Eleventh Circuit.

April 5, 2000.

Appeal from the United States District Court for the Middle District of Georgia, (No. 98-00018-5-CV-3-DF), Duross Fitzpatrick, Judge.

Before BLACK and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This is an appeal from the denial of a Fed.R.Civ.P. Rule 12(b)(6) motion to dismiss on qualified immunity grounds a complaint that alleged a substantive due process denial of medical treatment claim and physical abuse claim. This section 1983 complaint was brought on behalf of Kyle K., a mentally retarded child born in 1981, by his parents, against various mental health professionals, administrators, and direct care personnel connected with Central State Hospital (CSH), a Georgia hospital and residential treatment facility for the mentally disabled, concerning Kyle's treatment. Six of those defendants, Maggie Chapman, Larry Foston, Bettye Liggins, Elbert Johnson, Dorothy Simmons, and Annie Poole appeal the denial of their Rule 12(b)(6) motion. They are non-professionals called Health Services Technicians ("HST"s) who provided direct care to Kyle. Defendants raise essentially two issues on this appeal. We reverse as to one, and affirm on the other.

On the first issue, defendants argue that the duty of a state, established by *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28(1982), to provide minimally adequate care, treatment and training to Kyle, specifically in this case to protect Kyle from self-injurious behavior, does not apply to non-professional state employees such as these defendants. Since there was no clearly-established law that

would make the requirements of *Youngberg* apply to non-professional employees at the time of the actions subject to this complaint, these defendants are entitled to qualified immunity and the complaint against them alleging that cause of action should have been dismissed.

On the second issue, defendants argue that the court erred in denying qualified immunity to these defendants "who allegedly abused the mentally retarded minor Plaintiff, where no specific averments of fact are made against Appellants individually, where the averments are made 'on information and belief,' and where the District Court refused to require Plaintiffs to make a more definite statement." We affirm on the ground that, although further procedures will be necessary in order to develop the claim against each of these individual defendants, the complaint alleges with sufficient particularity facts establishing a causal connection between defendants' actions and the alleged constitutional violation for purposes of overcoming defendants' Rule 12(b)(6) motion to dismiss the complaint on qualified immunity grounds.

I.

Whether the amended complaint sufficiently states a claim is a matter of law we review *de novo,* assuming that all the allegations are true. *See Williams v. Alabama State Univ.,* 102 F.3d 1179,1182(11th Cir.1997). Qualified immunity shields government officials performing discretionary functions from civil liability if their conduct violates "no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants are entitled to qualified immunity in a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right. *See Williams,* 102 F.3d at 1182.

II.

Kyle K. was born January 6, 1981. According to the complaint, Kyle was diagnosed at an early age with autism. In 1991, he was admitted to Central State Hospital (CSH), a Georgia hospital and residential treatment facility for the mentally disabled after his parents became unable to handle his frequent temper

2

tantrums, agitation and mood swings. From the time he was admitted to CSH, Kyle had continuous episodes of self-abuse which included head-banging, face-slapping, body-pinching, body-hurling, biting his hands and upper arms, scratching his face and poking his eyes. In the summer of 1996, he was transferred to another institution.

## III.

Plaintiffs' substantive due process claims fall into two categories: the first concerns defendants' failure to protect Kyle from his self-abusive behavior, and the second relates to allegations that defendants abused Kyle physically and mentally.

## A.

As to the first category, plaintiffs have alleged that the defendants violated Kyle's substantive rights under the due process clause of the Fourteenth Amendment set forth in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28(1982), specifically, his right to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint.

The allegation amounts to a failure to properly treat Kyle's self-abusive behavior. Clearly this type of allegation falls within the duties contemplated in *Youngberg.* This duty, however, has never been held applicable to non-professional employees. The district court rejected in a footnote the argument that this case was distinguishable because defendants in this case were non-professionals, but it appears that this distinction is dispositive.

In reaching this conclusion, we look first to *Youngberg,* the controlling case regarding substantive due process rights of the involuntarily civilly committed patient. In *Youngberg,* the mother of a mentally retarded man, who, like Kyle in this case, was injured in part by his own violence, brought suit against the superintendent of the institution, the Director of Resident Life, and the Director for the unit in which the

3

plaintiff's son resided. All three were administrators who had varying degrees of supervisory authority over the treatment provided to the patient.

In arriving at the proper standard for analyzing whether the state adequately has protected the patient's rights, the Court determined that liability hinges on the "professional judgment" standard. "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg,* 457 U.S. at 323, 102 S.Ct. 2452. The Court in *Youngberg,* defined a professional decision maker as "a person competent, whether by education, training or experience, to make the particular decision at issue." *Youngberg,* 457 U.S. at 323, 102 S.Ct. 2452. What is implicit in *Youngberg* is that the alleged constitutional violation is related to some aspect of the treatment decision made by a professional decision maker.

Individuals with some role in the decision making process regarding treatment were defendants in two Eleventh Circuit cases addressing substantive due process claims in a similar context. In *Rodgers v. Horsley,* 39 F.3d 308(11th Cir.1994), an involuntarily committed patient who was allegedly raped brought a section 1983 action against the director of the hospital and chief administrator of the admissions unit. Both parties were responsible for "hiring, training, and supervising the individuals charged with monitoring patients." 39 F.3d at 310. Similarly, in *Dolihite v. Maughon,* 74 F.3d 1027(11th Cir.1996), the parents of an adolescent committed to a state hospital who suffered severe injuries after he tried to hang himself, brought suit against the social worker and psychologists, mental health professionals who had direct decision making authority over the patient, and administrative personnel. It must be noted that *Dolihite* was decided in 1996, the year in which Kyle was transferred from CSH, and therefore is not applicable in determining whether the defendant's alleged conduct violated clearly established law. In addition, *Dolihite* is inapplicable because it only addresses the responsibilities of professional decision makers.

4

Defendants in this case are not decision makers as defined in *Youngberg*. Instead they are the direct care workers whose primary responsibility is carrying out the directions of the officials who determine patient care. Plaintiffs have cited no case in which non-professionals such as these defendants were held to have violated the rights alleged. Whether the *Youngberg* standards should apply to non-professionals may be arguable, but with no clearly established law to that effect, defendants are entitled to qualified immunity on this claim.

## B.

As to the allegations of physical abuse category of plaintiff's claims, defendants acknowledge that a patient in a mental hospital has a substantive due process right to a safe environment, *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28(1982). A claim that those charged with the responsibility of providing daily care to such a patient inflicted physical or mental abuse on him states the denial of a constitutional right. Defendants contend that in this case, however, plaintiffs' allegations of abuse in their complaint lacked the factual specificity required to overcome the defense of qualified immunity. We hold that the complaint is sufficient to withstand a Rule 12(b)(6) motion. As is required under Fed.R.Civ.P. 8(a), the complaint contains a short and plain statement of the facts upon which the claims against these defendants are based sufficient to allege violation of a clearly established constitutional right.[1]

---

[1] The relevant portions of the complaint state:

> 57.
>
> Upon information and belief, the abusive treatment of Kyle by the HST Defendants included, among other things, punitively locking Kyle in closets, hitting, pushing, withholding food, forcing cold showers, grabbing his genitals and verbal abuse. These actions were taken in response to Kyle's exhibiting predicable autistic behaviors. They were for the convenience of staff and in lieu of treatment. These activities were known or should have been known to supervisory [defendants]....
>
> 96.
>
> Kyle was subject to acts of battery, personal physical invasion, improper restraint and excessive punishment by the HST Defendants. Such Defendants did not have the

Defendants complain that the allegations are too general because they collectively accuse all the defendants of all the acts and because the accuser, Kyle, is mentally impaired and unable to communicate his fears or to report abuse by others. The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct. Defendants' contention regarding Kyle's inability to communicate is a question of proof, not pleading. It is conceivable that there are other sources of knowledge concerning the alleged misconduct.

Nor does this complaint suffer from the deficiencies discussed in *GJR Investments, Inc., v. County of Escambia, Fla.,* 132 F.3d 1359(11th Cir.1998) and *Oladeinde v. City of Birmingham,* 963 F.2d 1481(11th Cir.1992), upon which defendants' rely for their argument that the complaint does not meet the heightened pleading requirement applicable to section 1983 actions against individual government officials. In both *GJR* and *Oladeinde,* the Court addressed the problem of "shotgun pleading," in which the complaint "presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional 'rights.' " *GJR Investments,* 132 F.3d at 1368. No such problem exists here.

In this case, plaintiffs have identified the defendants who were personally involved in the care of Kyle and in the alleged acts upon which the alleged constitutional violation is based. The complaint alleges with sufficient particularity facts establishing a causal connection between defendants' actions and the alleged constitutional violation for purposes of overcoming defendants' qualified immunity. More specificity can be

---

authority or discretionary right to subject him to or inflict abuse or to any physical restraint in non-emergencies without the order of a physician, nor to inflict physical punishment....

98.

Kyle was seized, held, restrained and touched by HST Defendants beyond that permitted by his treatment plan or by order of physician or by rules of the facility. Such actions were non-consensual. He was touched, pulled and grabbed, including grabbed in his genitals, without cause, excessively, maliciously and as punishment.

6

developed as the case proceeds. Of course, we voice no opinion as to whether the defendants, or any one of them, may be able to prevail ultimately on a motion for summary judgment.

IV.

In conclusion, defendants are entitled to qualified immunity on plaintiffs' claim that defendants failed to provide minimally adequate care, treatment and training in violation of Kyle's 14th amendment substantive due process rights as established in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28(1982). There is no clearly-established law that would make the requirements of *Youngberg* apply to non-professional employees at the time of the actions subject to this complaint. The complaint against them alleging that cause of action should have been dismissed.

The complaint adequately states a cause of action to withstand a 12(b)(6) motion, however, regarding the allegations that defendants abused Kyle in violation of his substantive due process rights. We therefore affirm the district court's decision that these defendants are not entitled to qualified immunity on these claims on a motion to dismiss.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.