[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 99-14594

D.C. Docket No. 99-00023-CV-JTC-3

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 18, 2001
THOMAS K. KAHN
CLERK

ANGIE CHESSER, a.k.a. Angie Kimball,

Plaintiff-Appellee,

versus

AMOS SPARKS, individually and in his
official capacity as Haralson County Commissioner,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(April 18, 20001)**

Before TJOFLAT, HULL and PROPST*, Circuit Judges.

_____

*Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting
by designation.

TJOFLAT, Circuit Judge:

The sole issue in this interlocutory appeal is whether the defendant county Commissioner, who is being sued for money damages in his individual capacity under 42 U.S.C. § 1983, is entitled to qualified immunity with respect to the plaintiff's claims that he terminated her employment in violation of her First Amendment rights of free speech and freedom of association. The district court denied the Commissioner's motion to dismiss, holding that the plaintiff's complaint alleged facts sufficient to defeat the defense of qualified immunity. We reverse.

I.

According to the allegations of her complaint, plaintiff Angie Chesser began working in the clerk's office in Haralson County, Georgia, in 1985. At the time of her discharge in February 1997, she held the position of Assistant County Clerk. Her responsibilities included the preparation of the payroll for the County's several departments, including the sheriff's office.

Haralson County is governed by a one-person commission. In the November 1996 general election, defendant Amos Sparks was elected Commissioner and Chesser's then-husband, Ronnie Kimball, was elected Sheriff; both took office on January 1, 1997. Sparks and Kimball were political enemies.

So, in an effort to avoid what might appear to be a conflict of interest, Chesser arranged for a co-worker to prepare the payroll for the sheriff's department.

On February 6, 1997, Sparks issued a memorandum to all county departments which stated that, due to budget concerns, overtime would not be reimbursed in the form of wages. Notwithstanding this instruction, overtime wages were paid to sheriff's department employees. Calling her attention to his memorandum, Sparks asked Chesser why overtime had been paid. After disclaiming knowledge of the memorandum, Chesser said that the County's failure to compensate overtime in the form of wages would violate the Fair Labor Standards Act.[1] Sparks terminated Chesser's employment on February 20, 1997;[2] his stated reason for the termination was that she was insubordinate and demonstrated a "lack of cooperation."

B.

_____

[1] Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., a public employee working overtime has the choice to be reimbursed either in the form of wages or compensatory time. 29 U.S.C. §§ 207(a) and (o). A public employer may only substitute compensatory compensation for overtime pay pursuant to a collective bargaining agreement or agreement between the employer and employee if there is no applicable collective bargaining agreement. 29 U.S.C. § 207(o)(2).

[2] Although the complaint makes no mention of the terms of her employment, we assume that Chesser was an at-will employee and that Sparks had the authority to terminate her employment.

3

Chesser responded to her discharge by filing a two count complaint in the Northern District of Georgia against Haralson County and Sparks, in both his official and individual capacities. Count One, brought under the Fair Labor Standards Act ("FLSA"), alleged that her discharge constituted retaliatory conduct proscribed by the FLSA.[3] Count Two, brought under 42 U.S.C. § 1983,[4] alleged that Sparks's termination of Chesser's employment infringed her First Amendment rights of free speech and of freedom of association (her marriage to the Sheriff).[5]

Both defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that neither count stated a claim for relief. Sparks, in addition, contended that he was entitled to qualified

---

[3] The FLSA makes it unlawful for an employer to:
discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.
29 U.S.C. § 215(a)(3) (1994).

[4] 42 U.S.C. § 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[5] Although Chesser's complaint does not mention the Fourteenth Amendment, which is the constitutional provision that makes the First Amendment applicable to state and local governments, see Wallace v. Jaffree, 472 U.S. 38, 49 n. 34, 105 S. Ct. 2479, 2486 n.34, 86 L. Ed. 2d 29 (1985) (collecting cases), we treat the complaint as alleging violations of the Fourteenth Amendment.

immunity on the Count Two claims asserted against him in his individual capacity. The district court granted the defendants' motions as to Count One, but denied them as to Count Two. The court also found the allegations of the complaint sufficient to overcome Sparks's qualified immunity defense. The court stated that it would reconsider the defense if Sparks moved for summary judgment following the completion of discovery. After the court made these rulings, Sparks lodged this appeal.

## II.

### A.

We have jurisdiction to review the denial of the defense of qualified immunity pursuant to 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817, 86 L. Ed. 2d 411 (1985). While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997). Whether the complaint alleges such a violation is a question of law which we review de novo, accepting the facts alleged in the complaint as true and drawing all reasonable

5

inferences therefrom in the plaintiff's favor.  Id.


B.

Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities.  Williams, 102 F.3d at 1182; Lassiter v. Ala. A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).  The doctrine shields government officials from liability to the extent that "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  The doctrine protects government officials from always "err[ing] on the side of caution" by shielding them both from liability "and the other burdens of litigation, including discovery."  Lassiter, 28 F.3d at 1149.

Evaluating the defense of qualified immunity involves a two step inquiry: first, whether the defendant's conduct violated a clearly established constitutional right; and, second, whether a reasonable government official would have been aware of that fact.  See Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1539 (11th Cir. 1994).  This two-step inquiry is designed to "provide[] ample protection to all but the plainly incompetent or those who knowingly violate the

6

law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

A constitutional right is clearly established if controlling precedent has recognized the right in a "concrete and factually defined context." Lassiter, 28 F.3d at 1149; see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). A plaintiff cannot avoid the qualified immunity defense "by referring to general rules and to the violation of abstract 'rights.'" Lassiter, 28 F.3d at 1150. If the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right. See Williams, 102 F.3d at 1182. With this two step inquiry in mind, we turn to the question of whether Sparks's decision to terminate Chesser's employment violated either of the First Amendment rights involved here – freedom of speech or freedom of association – in such a manner that a reasonable government official would have known.

III.

A.

"It is axiomatic that '[a] state may not demote or discharge a public employee in retaliation for protected speech.'" Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1539 (11th Cir. 1994) (quoting Morgan v. Ford, 6 F.3d 750, 753-54 (11th Cir. 1993)); see Rankin v. McPherson, 483 U.S. 378, 383, 107 S. Ct. 2891, 2896, 97 L. Ed. 2d 315 (1987). A public employee's right to freedom of speech, however, is not absolute. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). To determine whether a state actor has retaliated against an employee because of the employee's protected speech, we have used a four-pronged test based on the Supreme Court's decision in Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). See Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 841 (11th Cir. 2000).

First, we consider whether the employee's speech is "'fairly characterized as constituting speech on a matter of public concern.'" Bryson, 888 F.2d at 1565 (quoting Rankin, 483 U.S. at 384, 107 S. Ct. at 2896-97). If it is, we apply the Pickering balancing test, which weighs the employee's free speech interest against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs." Pickering, 391 U.S. at 568, 88 S. Ct. at 1734-35. If the employee's interests outweigh those of the state as an employer, we turn to the third prong: whether the speech "played a 'substantial part' in the government's

8

decision to discharge the employee." Fikes v. City of Daphne, 79 F.3d 1079, 1084 (11th Cir. 1996). If it did, we must address the fourth prong, which is whether the government has shown by a preponderance of the evidence that it would have discharged the employee regardless of the protected conduct. Id. at 1085.

1.

Speech addresses a matter of public concern, and thus establishes Pickering's first prong, if it relates "to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983). In making this determination, we examine the content, form, and context of the employee's speech. Bryson, 888 F.2d at 1565.

The speech at issue here is Chesser's statement to Sparks that the County's failure to pay wages for overtime would violate the FLSA. In focusing on the content, form, and context of the speech, we consider whether the employee is speaking as a citizen on behalf of the public or "as an employee upon matters only of personal interest." Connick, 461 U.S. at 147, 103 S. Ct. at 1690. Chesser's statement may not have been "only of personal interest," id., but she was certainly speaking as an employee when, as Assistant County Clerk in charge of payroll, she

told Sparks, in his capacity as County Commissioner, that the County could not lawfully refuse to pay overtime wages. Chesser cites no case, and our independent research has uncovered none, holding that a statement such as Chesser's, made in the same or similar context, satisfies the first prong of the <u>Pickering</u> test.[6] Because "case law, in factual terms, has not staked out a bright line," <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993), indicating that Chesser's speech was a matter of public concern, a reasonable government official in Sparks's position would have had no reason to believe that the Constitution protected Chesser's statement that the County's refusal to pay overtime wages would violate the FLSA.

---

[6] Chesser contends that <u>Martinez v. City of Opa-Locka</u>, 971 F.2d 708 (11th Cir. 1992), and <u>Gonzales v. Lee County Housing Authority</u>, 161 F.3d 1290 (11th Cir. 1998), support her claim that the First Amendment clearly protected her statement to Sparks. Neither case is on point. In <u>Gonzales</u> we reversed the district court's denial of qualified immunity on the plaintiff's free speech claim. We affirmed the district court's denial of qualified immunity only on the plaintiff's claim that the defendant terminated her employment in violation of a provision of the Fair Housing Act, 42 U.S.C. § 3617. <u>Gonzales</u>, 161 F.3d at 1298, 1305.

In <u>Martinez</u>, the plaintiff alleged that she was discharged for testifying before a Board of Inquiry that the defendant, the city manager, had violated bid procedures in purchasing furniture for the city hall. <u>Martinez</u>, 971 F.2d at 710-11. We affirmed the denial of qualified immunity, finding that the plaintiff's speech was protected under the first prong of the <u>Pickering</u> test, <u>id.</u> at 712; the plaintiff's statements were made before a Board of Inquiry and provided information concerning the expenditure of public funds. <u>Id.</u> We further noted that the form of the speech was testimony and that the context was an examination into the activities of city personnel which was being conducted by officials having investigatory powers. <u>Id.</u> None of these factors exist in the instant case. Here, Chesser spoke directly to Sparks about paying overtime wages; there was no official investigation and the speech was not made to inform a third party.

2.

Even if we were to find that binding precedent[7] clearly established a constitutional right to inform one's supervisor of the requirements of the law, Chesser cannot satisfy the second prong of the Pickering test. That prong requires us to consider three factors: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." Bryson, 888 F.2d at 1567 (internal quotations omitted). "Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where Pickering balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir. 1989).

"We need not decide the precise result of applying the . . . balancing test to this case. We must decide only whether the result would be such that a reasonable official in [the defendant's] place would know that the termination of [the plaintiff] under these circumstances violated [the plaintiff's] constitutional rights." Id. at

_____

[7] Binding precedent in this circuit consists of Supreme Court and Eleventh Circuit decisions (including Fifth Circuit cases handed down prior to October 1, 1981). Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

11

1324. Here, Sparks certainly had an interest in maintaining "loyalty, discipline and good working relationships among those he supervises." Id. Regardless of whether Chesser's interpretation of the FLSA was correct, Sparks may reasonably have believed that Chesser was being insubordinate and disruptive, and hence that he was justified in discharging her.[8] In sum, Chesser cannot satisfy the second prong of the test; consequently, we need not move to the third and fourth prongs. The district court erred in not granting Sparks qualified immunity with respect to the free speech component of Count Two.

B.

The second theory of recovery in County Two is that Chesser's employment was terminated because of her association with her then-husband, Ronnie Kimball. To prevail on this theory, the plaintiff must demonstrate that she had a constitutional right and that she suffered "adverse employment action for exercising the right." McCabe v. Sharrett, 12 F.3d 1558, 1562 (11th Cir. 1994) (quotation omitted). If the plaintiff has established both elements, we use the Pickering balancing test to determine whether the adverse employment action was

---

[8] The complaint, in fact, specifically alleges that Sparks claimed that Chesser was being insubordinate.

permissible. See Ross v. Clayton County, 173 F.3d 1305, 1310-11 (11th Cir.

1999); cf. Shahar v. Bowers, 114 F.3d 1097, 1106-07 (11th Cir. 1997) (en banc)

(employing the Pickering balancing test in the context of a same-sex marriage).

Count Two contains the two elements set out above. First, it asserts the

constitutional right of free association, which in this case is an intimate association.

"At a minimum, the right of intimate association encompasses the personal

relationships that attend the creation and sustenance of a family – [specifically]

marriage . . . ." McCabe, 12 F.3d at 1563. Second, Count Two alleges that,

because of her relationship with her husband, Chesser suffered an adverse

employment action (termination). Count Two goes on to state, however, that her

employment was terminated for insubordination and lack of cooperation.

As an employer, Haralson County certainly has an interest in having

employees who are not insubordinate.[9] We can find no concrete and factually

defined case that has held unconstitutional an employer's decision to discharge an

---

[9] As we have said:
The more a public employee's transfer or discharge is necessary to the effective functioning of the office, the more the transfer or discharge becomes justifiable, and thus the more likely it is that a court will find the transfer or discharge constitutionally permissible by finding the employer's interest to outweigh the employee's interest in the Pickering balance.
McCabe, 12 F.3d at 1570.

13

employee due in part to insubordination.[10]  A reasonable government actor in Sparks's position would have no reason to believe that such a decision would violate the law.  The district court erred in not granting qualified immunity to Sparks on this Count Two claim.

IV.

For the foregoing reasons, the decision of the district court denying Sparks's qualified immunity on Chesser's Count Two claims is

REVERSED.

---

[10] The district court based its denial of the motion to dismiss on our decision in Wilson v. Taylor, 733 F.2d 1539, 1544 (11th Cir. 1984).  Wilson involved a claim by a police officer that his employment was terminated for dating the adopted daughter of "a convicted felon reputed to be a key figure in organized crime in central Florida."  Id. at 1540.  We stated that "[a] state violates the [F]ourteenth [A]mendment when it seeks to interfere with the social relationship of two or more people."  Id. at 1544.  While that statement holds true today, we expressly recognized in Wilson that it was "a narrow holding."  Id. at 1544 n.3.

> In this case, the [defendant] made the argument that dating was not protected under the [F]irst [A]mendment freedom of speech provision.  The [defendant] did not make the argument that even if dating were protected under the freedom of association provision of the [F]irst [A]mendment, a[n employee's] rights under that provision could be curtailed due to the nature of [the employment].

Id.  Because Wilson did not employ the Pickering balancing test, the decision would not have informed a reasonable government actor standing in Sparks's shoes that he would infringe Chesser's constitutional right of intimate association if he terminated her employment.