Brandy **FLANAGAN**, Rebecca Gauss, and Tina Jones, Plaintiffs

v.

**ANNE ARUNDEL COUNTY**, et al., Defendants.

Civil Nos. L–08–421, 08–422, 08–423.

United States District Court, D. Maryland.

Jan. 22, 2009.

---

John Thomas Hamilton, Jr., Rollins Smalkin Richards and Mackie, Baltimore, MD, for Plaintiffs.

Hamilton Fisk Tyler, Annapolis, MD, Lindsay Cohn Cooper, Baltimore, MD, for Defendants.

### *MEMORANDUM*

BENSON EVERETT LEGG, Chief Judge.

### I. Introduction

This Memorandum, and accompanying Order, addresses three related cases: *Brandy N. Flanagan v. Anne Arundel County, Maryland et al.*, Docket No. L–08–421; *Rebecca Gauss v. Anne Arundel County, Maryland et al.*, Docket No. L–08–422, and *Tina Jones v. Anne Arundel County, Maryland et al.*, Docket No. L–08–423.

Each case involves plaintiffs who were allegedly sexually harassed and assaulted during police traffic stops by Anne Arundel County, Maryland Police Officer Joseph Mosmiller. The case has four defendants: former Officer Joseph Mosmiller, Anne Arundel County, current County Police Chief James Teare, Sr., and former County Police Chief P. Thomas Shanahan. Plaintiffs press a single federal claim under 42 U.S.C. § 1983 for alleged violations of their federal civil rights and two pendant state law claims.

Now pending are three nearly identical Motions to Dismiss the Complaint by defendants Anne Arundel County, Chief Teare, and Chief Shanahan (collectively

the "County defendants").[1]

## A. Consolidation of Cases

The facts of each case are nearly identical, all three plaintiffs are represented by the same counsel and are proceeding against the same defendants, the papers are virtual facsimiles of one another, and identical counts are alleged. Specifically, the plaintiffs raise a single federal claim under 42 U.S.C. § 1983 for a violation of their federal rights. Because each action raises identical questions of law and fact, the Court, by separate Order, CONSOLIDATES the actions pursuant to Federal Rule of Civil Procedure 42(a).

## B. County Defendants

Anne Arundel County, Chief Teare, and former Chief Shanahan have moved to dismiss the sole federal claim pending against them under 42 U.S.C. § 1983 for failure to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6). No hearing is necessary as the motions have been fully briefed. Local Rule 105.6 (D.Md.2008).[2] For the reasons stated herein, the Court, by separate Order, GRANTS the Motion to Dismiss the County defendants.

The Court declines to exercise supplemental jurisdiction over the remaining pendant state law claims, see 28 U.S.C. § 1367(c)(3), so this Memorandum will not address the County defendants' arguments regarding the remaining state law claims.

## C. Defendant Mosmiller

The other defendant, former Police Officer Joseph Mosmiller has filed an answer through separate counsel.[3] Accordingly, the case shall proceed against Mosmiller and the Court will issue a discovery scheduling order in due course. This Memorandum does not address any claims pending against Mosmiller.

## II. Background

### A. Factual Allegations

The plaintiffs and the County defendants agree as to the material facts alleged by the plaintiffs. Anne Arundel County, Maryland Police Officer Joseph Mosmiller had been on the job for about one year. During two traffic stops, he allegedly sexually harassed and/or assaulted both drivers and a passenger.

#### 1. Plaintiff Tina Jones

The first incident allegedly occurred around 2:00 a.m. on December 5, 2006 when Plaintiff Tina Jones and an unnamed passenger were stopped by Mosmiller. Mosmiller ordered Jones from her vehicle and administered field sobriety tests. Mosmiller then informed Jones she had failed the sobriety tests, and threatened her with arrest. Mosmiller then ordered Jones to drive to her destination, a nearby

---

1. Plaintiffs originally named the Anne Arundel County Police Department as a defendant. In their oppositions to the motion to dismiss, Plaintiffs moved to voluntarily dismiss the Police Department because it lacks the legal identity necessary to be named as a defendant. See Opp'n ¶ 1. This motion is granted.

2. In fact, plaintiffs filed surreplies without leave from the Court as required by Local Rule 105.2(a). Defendants moved to strike the surreplies. Accordingly, the surreplies are stricken.

3. After the motion was fully briefed, the following claims against Mosmiller remain. Under federal law, an alleged violation of 42 U.S.C. § 1983 (Count 3). Under state law, an alleged violation of the Maryland Declaration of Rights (Count 2), Intentional Infliction of Emotional Distress (Count 4), Intrusion Upon Seclusion (Count 5), Assault and Battery (Count 9), and False Imprisonment and Arrest (Count 10). Counts 6, 7, 8, and 11 were voluntarily dismissed by plaintiffs. See note 4.

home, while he followed her. He then ordered Jones' passenger into the home and told Jones to come to his police vehicle.

Once Jones was at the vehicle, Mosmiller told Jones that she would be arrested and imprisoned unless she showed him her breasts. Jones refused. Mosmiller then asked what she would do to avoid going to prison. Jones offered to give Mosmiller her cell phone number. Without issuing any citations, Mosmiller allowed Jones to leave the scene.

Jones then received repeated harassing communications from Mosmiller on her phone. Jones did not report the incident.

### 2. Plaintiffs Brandy Flanagan and Rebecca Gauss

The second incident occurred around 1:30 a.m. on January 20, 2007. Plaintiffs Brandy Flanagan, the driver, and Rebecca Gauss, the passenger, were allegedly stopped by Mosmiller. Mosmiller ordered Flanagan and Gauss to follow him to a secluded library parking lot. Flanagan complied. Mosmiller then received another call on his police radio requiring his presence elsewhere, which he departed to respond to. He ordered Flanagan to remain in the parking lot, which she did. Mosmiller returned from the call and ordered Flanagan to follow him in her car to a different, secluded parking lot at a church.

Mosmiller then administered a field sobriety test on Flanagan, which she "failed." She later was administered a breathalyzer test, which returned a 0.00% blood alcohol level. Flanagan Compl. ¶ 6. Mosmiller told Flanagan she had failed the sobriety test and would be arrested and imprisoned unless both Flanagan and Gauss showed him their breasts. They both initially refused, but after further threats of arrest, Flanagan complied. Mosmiller allegedly groped Ms. Flanagan's breast and took pictures of her. The passenger and now-plaintiff, Ms. Gauss, watched the assault. At some point during the stop, Mosmiller rubbed Gauss' shoulder and said "inappropriate words" to her. Gauss Compl. ¶ 6. Mosmiller then allowed Flanagan and Gauss to leave without any citations.

Ms. Flanagan drove to a nearby police station and immediately reported the incident. At the police station, Ms. Flanagan was initially disbelieved and then allegedly instructed to not tell anyone about the incident, especially her father.

During the police investigation, it was determined that Mosmiller did not call in either stop, which violated state regulations. After Mosmiller's conduct was first reported to the police by Ms. Flanagan, he was immediately suspended and never returned to the force. On July 27, 2007, Mosmiller pled guilty in state court to one count of Misconduct in Office and, as part of the plea agreement, forced to resign from the department.

### B. Legal Claims

Plaintiffs, in three separate but nearly identical complaints, alleged that Mosmiller was negligently hired, trained, supervised, and/or retained. They assert that he was "not qualified to become a police officer" because "[h]e did not meet the necessary criteria and/or pass the necessary tests." Flanagan Compl. ¶ 14. Plaintiffs contend that Mosmiller was nevertheless hired by former Chief Shanahan and retained by Chief Teare. *Id.* The complaints allege that Chief Shanahan "also employed other officers who were not qualified," but provides no other information such as their names. According to the complaint, the County and both Chiefs "knew or should have reasonably known" that Mosmiller and "others" were "not

qualified." *Id.* ¶ 14–15. Without elaboration, plaintiffs claim that the County defendants "failed to properly train and/or supervise" Mosmiller to prevent his conduct towards the plaintiffs. *Id.* ¶ 16. Plaintiffs conclude, again without elaboration, that Mosmiller's negligent employment and retention, and lack of training and supervision were the proximate cause of plaintiffs' harm. *Id.* ¶ 17.

### 1. Federal Claim: 42 U.S.C. § 1983 Claim against the County Defendants

Plaintiffs allege only one federal claim against the County defendants under 42 U.S.C. § 1983. This sole federal claim is Count 3 in each complaint. In this claim, plaintiffs allege that the County and Chiefs Teare and Shanahan, in their official and personal capacities, are liable for the violation of plaintiffs' federal rights.

### 2. Pendant State Law Claims

Plaintiffs originally alleged ten state law claims against the County. In their opposition to the motion to dismiss, plaintiffs voluntarily dismissed four of the counts for failure to state a claim under Maryland law.[4] Resp. ¶ 5. Plaintiffs also voluntarily dismissed Anne Arundel County from all state law tort claims because, they concede, the County cannot be sued directly for merely tortuous conduct of its agents under Maryland law. Resp. ¶ 4, 6–8, 10; *see* Md.Code Ann., Cts. & Jud. Proc. § 5–303.

Only two state law claims now remain against the following County defendants: Count 1, Negligent Hiring, Training, Supervision and/or Retention against Chiefs Teare and Shanahan; and Count 2, Violation of Maryland Declaration of Rights against the County and the Chiefs.

### III. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). This "plausibility standard" applies to all of plaintiffs' claims, including the claims subject to the defense of qualified immunity. *See Iqbal v. Hasty,* 490 F.3d 143, 157–58 & 166 (2d Cir.2007).

The plausibility standard requires the complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* at 158. Plausible facts are facts that will "raise a reasonable expectation that discovery will reveal evidence" of illegality and "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965. The pleadings must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1965; *accord Giarratano v. Johnson,* 521 F.3d 298, 304 (4th Cir. 2008). While a court need not accept "a legal conclusion couched as a factual allegation," *Twombly,* 127 S.Ct. at 1965, it must "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001). Ultimately, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Giarratano,* 521 F.3d at 302 (quoting *Twombly,* 127 S.Ct. at 1974) (emphasis in original).

---

**4.** The following counts were voluntarily dismissed: Count 6 (Unreasonable Publicity to Private Life); Count 7 (Breach of Fiduciary Duty); Count 8 (Respondeat Superior), and Count 11 (Action Under Local Government Tort Claims Act).

■ It is clear, though, that heightened pleading is not required in the civil rights context. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Plaintiffs also sue Chiefs Teare and Shanahan in their personal capacities, so the Court must examine the proper standard to evaluate whether these defendants may successfully invoke the defense of qualified immunity at this stage of the litigation. A motion to dismiss based on qualified immunity must be granted unless plaintiffs state plausible facts that the defendants violated their clearly established federal rights. *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004); *Williams v. Alabama State University,* 102 F.3d 1179, 1182 (11th Cir.1997); *see Giarratano,* 521 F.3d at 302.

## IV. Analysis

### A. Violation of 42 U.S.C. § 1983 by the County defendants

■ Against the County and the Chiefs, the plaintiffs allege negligent hiring, training, retention, and supervision.[5] To state a claim under 42 U.S.C. § 1983, plaintiffs must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by the state actor. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

■ Local government entities, counties included, cannot be held liable solely on the basis of respondeat superior—that is "for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir.1994); *accord Monell,* 436 U.S. at 694, 98 S.Ct. 2018.[6] A "direct causal link" must exist "between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999).

■ Plaintiffs sue Chiefs Teare and Shanahan in both their official and personal capacities.[7] A suit against the Chiefs in their official capacity is functionally equivalent to a suit against the municipality. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). This means that the Chiefs can be held liable in their official capacities only if the execution of a policy or custom inflicts the injury on the plaintiffs. Therefore, to state a claim under § 1983, plaintiffs must

---

5. The complaints also allege that any constitutional deprivation occurred through the "negligent, unjustified, grossly negligent, or malicious conduct" of the County defendants. Flanagan Compl. ¶ 30; *see id.* ¶ 33. Plaintiffs do not elaborate on this conclusory allegation.

6. This requirement does not constitute heightened pleading because "there is no suggestion, either in *Leatherman* or in *Jordan,* that the Supreme Court has rejected the requirement that the plaintiff 'plead and prove' an official policy or custom in a 1983 case."

*Harrison v. McNeill,* No. CCB–07–3399, slip op. at 3 n. 1, 2008 WL 2074146 (D.Md., May 9, 2008).

7. The complaints do not specify in what capacities the plaintiffs sue the Chiefs. Based on the scope of the complaint and the motion to dismiss, the Court construes the allegations to be against the Chiefs in both their official and individual capacities. *See Biggs v. Meadows,* 66 F.3d 56, 59–60 (4th Cir.1995).

allege a plausible policy or custom of the County defendants that caused the constitutional violation.

■ Plaintiffs do not adequately plead a policy or custom to survive a motion to dismiss.[8] In the most general terms, plaintiffs state, "each of the acts alleged in this Complaint were undertaken with the sanction of or under the established policy, custom, conduct or guidelines of Anne Arundel County and Anne Arundel Police Department, permitting or allowing Defendant Mosmiller to engage in such activities." Flanagan Compl. ¶ 25.

This is insufficient to state a claim because it does not provide the County with adequate notice with which to frame a response. See Fed.R.Civ.P. 8. Plaintiffs' inability to point to any specific policy or custom is fatal to their case.

Plaintiffs' anemic pleading also does satisfy the necessary causation element. Plaintiffs must plead a County policy or custom that proximately causes the harm. See Jordan by Jordan, 15 F.3d at 338; see also Spiller v. City of Texas City Police Dep't, 130 F.3d 162, 167 (5th Cir.1997). By failing to state any policy whatsoever, no causal inference may be drawn to support plaintiffs' claims.

■ Further, plaintiffs' bare bones pleadings do not state a plausible claim for relief. See Twombly, 127 S.Ct. at 1974; accord Giarratano, 521 F.3d at 304. The bare allegation that Mosmiller was "not qualified" because he "did not meet the necessary criteria and/or pass the neces-

sary tests," Flanagan Compl. ¶ 14, appears to be pure speculation devoid of factual support. Plaintiffs, in briefing their opposition to the motion to dismiss, did not elaborate on the factual basis of the complaint nor did they seek leave to amend it. The allegation that the County defendants "failed to properly train and/or supervise Defendant Mosmiller to prevent his conduct," Id. at ¶ 16, is a mere legal conclusion without any factual basis sufficient to sustain a claim "that is plausible on its face." Giarratano, 521 F.3d at 302 (quoting Twombly, 127 S.Ct. at 1974). These allegations represent the entire basis of plaintiffs' factual pleading, and give the Court no confidence that discovery could provide any evidence of illegality on the part of the County defendants. See Twombly, 127 S.Ct. at 1965. Therefore, plaintiffs fail to state a § 1983 claim for which relief may be granted against Anne Arundel County and the Chiefs in their official capacities.

For many of these same reasons, plaintiffs also fail to state a claim against the Chiefs in their individual capacities. The claims do not provide the Chiefs with sufficient notice to respond, nor do they state a claim against the Chiefs that is plausible on its face. At best, plaintiffs state a right to relief that is entirely speculative, which the Supreme Court in Twombly has clearly found inadequate. Accordingly, the claims must be dismissed against the Chiefs in their individual capacities for failure to state a claim.

8. Policies and customs include informal actions of officials with final decision-making authority. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A governmental custom exists only if the practices are persistent and widespread so as to have sufficient permanence and stability as to have the "force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Further, deliberate indifference on the part of the defendants can constitute a type of policy which may give rise to § 1983 liability, but only if it is obvious that a constitutional violation would likely result from inaction. See, e.g., City of Canton v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

## B. Section 1983 Claims against Chiefs Teare and Shanahan Are Also Barred by Qualified Immunity

Government officials performing discretionary functions are protected from liability from civil damages to the extent that their conduct does not violate clearly established federal rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This is because qualified immunity is "an immunity from suit." *Id.* at 200, 121 S.Ct. 2151. Indeed, "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan,* — U.S. ——, 129 S.Ct. 808, 815, — L.Ed.2d —— (2009) (internal quotations omitted).

A court should approach qualified immunity in three stages: (1) whether a constitutional right has been violated; (2) whether that right was clearly established at the time of the violation, and (3), if so, then whether a reasonable person in the officer's position would have known that his or her actions violated that person's right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

It is without a doubt that the facts alleged by Ms. Flanagan state a constitutional violation against defendant Mosmiller. Ms. Jones and Ms. Gauss may as well. The Court does not decide these questions now because they are irrelevant to the pending motions by the County defendants.

The question here is whether the facts alleged state a constitutional violation by the Chiefs, either directly or indirectly, against the plaintiffs. Put differently, taking the plaintiffs' allegations as true, do the facts alleged show that Chiefs Teare and Shanahan's hiring, retention, supervision, and training violated a constitutional right of any plaintiff? *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The answer is certainly no.

Plaintiffs make no allegations that the Chiefs played any role in Mosmiller's actions, directly or indirectly, passively or actively. Plaintiffs allege no facts that support the an inference that the Chiefs were implicated in or had knowledge of defendant Mosmiller's criminal conduct. Nor may the inference be drawn that the Chiefs should have been on notice, but were not. The first incident against Ms. Jones occurred in December 2006, and went unreported. The second incident involving Ms. Flanagan and Ms. Gauss occurred the following month, and was reported. Mosmiller was immediately suspended. Nothing in the facts supports a claim that the Chiefs in any way violated the plaintiffs' rights or exhibited a deliberate indifference towards them.

In fact, the facts paint Chief Teare, the acting Chief in January 2007, in a favorable light. When confronted with Ms. Flanagan's complaint, Chief Teare acted swiftly by immediately removing Mosmiller from duty. Accordingly, Chiefs Teare and Shanahan are entitled to qualified immunity under the *Saucier/Pritchett* analysis.

Assuming *arguendo* that plaintiffs state a constitutional violation against Chiefs Teare and Shanahan, which appears purely speculative, and again assuming *arguendo* that those rights were clearly established, which appears unlikely with respect to the Chiefs, the plaintiffs' inability to allege

facts concerning Mosmiller's history that would have put the Chiefs on notice that he was likely to sexually assault and harass County residents further entitles the Chiefs to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, plaintiffs' sole federal claim against the Chiefs in their personal capacities must also be dismissed on the grounds of qualified immunity.

### C. Dismissal of Pendant State Law Claims under 28 U.S.C. § 1367(c)(3)

 The only remaining claims against the County defendants are pendant state law claims. Courts may decline to exercise supplemental jurisdiction over pendant state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In fact, the U.S. Supreme Court has "expressly cautioned" that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Jones v. Ziegler*, 894 F.Supp. 880, 896 (D.Md.1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).[9] The Court will not exercise pendant jurisdiction over plaintiffs' remaining state law claims against the County defendants.

As stated above, this Memorandum does not address defendant Mosmiller, and all federal and state counts remain against him.

9. In *Jones v. Ziegler,* a case with similar facts and claims, this Court declined to exercise supplemental jurisdiction over the state

### V. Conclusion

For the foregoing reasons, the Court will, by separate Order, GRANT the County defendants' Motions to Dismiss the sole federal count, Count 3 (42 U.S.C. § 1983), only, and DISMISS the County defendants from the case.

claims once it dismissed all of the federal claims.