[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13378
Non-Argument Calendar

_____

D. C. Docket No. 05-00068-CV-CDL-3

DONNA O. EPPS,

Plaintiff-Appellee,

versus

LOUISE WATSON, as Tax Commissioner of Madison
County and Individually,

Defendant-Appellant,

MADISON COUNTY, GEORGIA,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(July 18, 2007)**

Before EDMONDSON, Chief Judge, and BIRCH and WILSON, Circuit Judges.

BIRCH, Circuit Judge:

Madison County Tax Commissioner Louise Watson brings an interlocutory appeal arguing that the district court erred in determining that: (1) Donna Epps' Amended Complaint adequately pleads a First Amendment Freedom of Association claim; (2) the Tax Commissioner's conduct would violate clearly established Freedom of Association law; and (3) Epps' Amended Complaint adequately pleads a procedural due process violation and her allegations overcome Watson's qualified immunity defense. We AFFIRM.

## I. BACKGROUND[1]

According to her Amended Complaint, Epps "was employed by the County as a clerk in the Tax Commissioner's Office." R-12, Exh. A at 3. Watson, the tax commissioner for Madison County, Georgia, supervised Epps. Epps "was not in any decision making role within the department." Id. at 4. "All ministerial decisions relating to the Tax Commissioner's Office were made by Defendant Watson." Id.

---

[1] At this procedural point, we, like the district court, accept as true the facts as set forth in Epps' Amended Complaint. See Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998) ("In reviewing a motion to dismiss based on qualified immunity, the district court is required to accept the factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff." (citation omitted)).

During the 2004 election for tax commissioner, in which Watson ran as the incumbent, Epps allowed Watson's opponent to place campaign signage on her private property. Watson knew that Epps historically had allowed political candidates to place such signage on her property and Watson did not at anytime request permission to place campaign signage on Epps' property.

In 2004, Watson was the incumbent in an election campaign and after Watson was re-elected, Watson stated "I am going to clean house." Id. at 5. Watson dismissed Epps from her staff the day after her re-election. Watson stated that Epps was "doing a good job," but stated the reason for Epps' termination was "a cold environment." Id. at 6. Epps sought to appeal her dismissal but could not because the tax commissioner's staff is not subject to the appeals process of Madison County. Epps subsequently filed suit in district court against Watson, both individually and as tax commissioner, alleging that she was dismissed from Watson's staff because she had allowed Watson's opponent to display political campaign signage on her private property and that she was denied due process in attempting to appeal her dismissal. Epps, pursuant to 42 U.S.C. § 1983, sought to recover monetary damages from Watson, alleging that Watson violated her rights under the First and Fourteenth Amendments.

Watson filed a pre-answer motion to dismiss Epps' claims on the basis of

qualified immunity from suit in her individual capacity. The district court denied Watson's motion and she filed a timely appeal.

## II. DISCUSSION

"We have jurisdiction to review the denial of the defense of qualified immunity on interlocutory appeal pursuant to 28 U.S.C. § 1291." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (citation omitted). We review a district court's decision to deny the defense of qualified immunity de novo, "accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Id. (citation omitted). Our circuit, however, imposes a heightened pleading requirement in section 1983 claims against individuals and plaintiffs cannot rely on "vague or conclusory" allegations. See GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right."); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that in civil rights actions "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." (citations omitted)).[2] In such

_____

[2] In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160 (1993), the Supreme Court ruled that heightened pleading was not to be

4

cases, the complaint must allege the relevant facts "with some specificity." Id. (citation omitted). "We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy.'" Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (alterations omitted) (citing United States Dep't of State v. Ray, 502 U.S. 164, 179, 112 S. Ct. 541, 550 (1991)).

Within the context of a Rule 12(b)(6) motion, as there is no record beyond the complaint, the well-pleaded factual allegations in the plaintiff's complaint are the focus of the determinations. Id. at 994-95. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (citation omitted); Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840 (1996) ("At [the 12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'").

"The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only." Marsh v. Butler County, Ala.,

applied in civil rights cases against municipalities, because municipalities were not entitled to immunity. The Supreme Court did not, however, address the propriety of the application of heightened pleading in civil rights cases under 42 U.S.C. § 1983 when the defendant is not a municipality.

5

268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*) (citations omitted). We have applied the qualified immunity defense at the 12(b)(6) stage before. See, e.g., Chesser v. Sparks, 248 F.3d 1117 (11th Cir. 2001) (reversing the district court's denial of official's motion to dismiss plaintiff's freedom of expression and freedom of association claims on the basis of qualified immunity); Denno v. Sch. Bd. of Volusia County, 218 F.3d 1267 (11th Cir. 2000) (affirming the district court's Rule 12(b)(6) dismissal of plaintiff's § 1983 claim for the deprivation of First Amendment rights against the individual defendants); Maggio v. Sipple, 211 F.3d 1346 (11th Cir. 2000) (reversing the district court's failure to grant 12(b)(6) motion to dismiss because defendants were entitled to qualified immunity).

A public official who asserts a defense of qualified immunity must establish that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted). Where there is no dispute as to the discretionary nature of the actions complained of, like here, we look to determine (1) whether the plaintiff has factually alleged the deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Holloman, 370 F.3d at 1264. The plaintiff bears the burden of proof as to both of these

6

determinations.  Dalrymple, 334 F.3d at 995 ("Once the government official has established that she was acting within her discretionary authority, the burden shifts to the plaintiff [] to show that qualified immunity is not appropriate." (citation omitted)).  With this two-step inquiry in mind, we turn to the question of whether Watson's decision to terminate Epps' employment violated the First Amendment right involved here–the freedom of association–in such a manner that a reasonable government official would have known.[3]

## A.  Epps' First Amendment Claim

In her Amended Complaint, Epps alleged that she allowed Watson's opponent to place campaign signage on her private property.  Moreover, Epps alleged that Watson knew that Epps had historically allowed political candidates to place such signage on her private property and Watson did not at anytime request permission to place campaign signage on Epps' property.  Epps alleged that she was fired the day of Watson's re-election and was told by Watson that she was performing well at the time she was dismissed and the reason for the dismissal was a "cold environment."  R-12, Exh. A at 5-6.  Watson contends Epps' First Amendment claim fails because the allegations in her Amended Complaint do not

---

[3] We agree with both the district court and counsel that this case is best construed as a pure political patronage case.  See Terry v. Cook, 886 F.2d 373, 377 (11th Cir. 1999) (holding that when public employment is "absolutely conditioned on political allegiance and not upon the content of expressions of political beliefs," the political patronage analysis is appropriate).

show a violation of freedom of association, and even if they did, Epps has not established that Watson had fair warning that dismissing Epps would violate clearly established law.

1.  Sufficiently Alleged Constitutional Violation

Epps alleged that she allowed Watson's opponents to place campaign signage on her property during Watson's 2004 campaign and the day after Watson won re-election she fired Epps.  It is reasonable to infer from Epps' Amended Complaint that Epps contended that her indication of public support for Watson's challenger was the reason that Watson fired her.

In examining whether the Epps has alleged a constitutional violation, we first note that we agree with both the district court and counsel that this case is best construed as a pure political patronage case.  See Terry v. Cook, 886 F.2d 373, 377 (11th Cir. 1999) (holding that when public employment is "absolutely conditioned on political allegiance and not upon the content of expressions of political beliefs," the political patronage analysis is appropriate).  In such cases, we use the Elrod-Branti analysis in determining if patronage discharges were constitutional. In Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2689 (1976), a plurality of the Supreme Court declared patronage dismissals unconstitutional, because the practice limited political belief and association, and therefore violated the First and

8

Fourteenth Amendments. The Court, however, created a narrow exception, allowing patronage dismissals of those holding policymaking positions, reasoning that this exception would, in part, advance the important government goal of assuring "the implementation of policies of [a] new administration, policies presumably sanctioned by the electorate." Id. at 367, 96 S. Ct. at 2687. Four years later, in Branti v. Finkel, 445 U.S. 507, 518, 100 S. Ct. 1287, 1295 (1980), the Court modified the test: "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."

In Terry v. Cook, we addressed what positions may permissibly be subject to political patronage action in the context of a county sheriff's office. 866 F.2d at 373. We held that "[t]he closeness and cooperation required between sheriffs and their deputies" necessitated "absolute authority" by the sheriff over hiring and firing his deputies. Id. at 377. We reasoned that "a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff . . . and the sheriff is civilly liable for actions committed by a deputy done in the performance of his duty." Id. (internal citations omitted). In contrast, we stated that "[i]t has not been established that loyalty to an individual sheriff is an

9

appropriate requirement for effective job performance for the [] positions of clerk, investigator, dispatcher, jailer, and process server." Id. at 377-78. Focusing on five aforementioned positions' non-deputized status and clerical nature, we stated that:

> Such positions traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the officer are implemented. Although it can be said that each job in the sheriff's office implements the policies of the office, the limited and defined roles these positions tend to play do not support the need for political loyalty to the individual sheriff.

Id. at 378. As a result, we remanded the matter to the district court for "a determination of the actual responsibilities of each position and whether political loyalty to the elected sheriff is a reasonably appropriate requirement for the effective performance of those jobs." Id.

Here, the allegations in the Amended Complaint do not indicate that Epps' job was deputized or "require[d] [her] to function as the alter ego of the [Tax Commissioner] or ensure that the policies and goals of the office are implemented." See id. Instead, at this stage, there are only allegations that as a "clerk," Epps "was not in any decision making role within the department," R-12, Exh. A at 4, a job that can reasonably be inferred to "traditionally revolve around limited objectives and defined duties." See Terry, 886 F.2d at 378. As a result,

10

construing all reasonable inferences in the light most favorable to Epps, we find that Epps has factually alleged the deprivation of a constitutional right to freely associate and the district court did not err in inferring a violation of Epps' First Amendment right of freedom of association.

2. Clearly Established Law

"Clearly established law" is law that is sufficiently defined so as to provide public officials with "fair notice" that the conduct alleged is prohibited. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (internal citations and quotation omitted)). Citing Terry, Elrod, and Branti, Epps argues that the law in this instance is "clearly established," that is, she asserts that "[p]ublic employment may not be conditioned upon political affiliation to any party or individual." Appellee Br. at 4.

Prior to Epps' termination, we issued Terry. Although in the context of a sheriff's office instead of a tax commissioner, Terry's premise clearly established

11

that "the limited and defined role[] [a clerk] tend[s] to play do[es] not support the need for political loyalty to the individual sheriff." See 866 F.2d at 378. "Although the facts of the case are not identical," as here Epps was a clerk under the Tax Commissioner and not a sheriff, Terry's "premise has clear applicability in this case." See Hope, 536 U.S. at 743, 122 S. Ct. at 2517.

We find that Watson did have "fair notice" that such alleged conduct is unconstitutional, as the law here was "clearly established." See Hope, 536 U.S. at 739, 122 S. Ct. at 2515. As a result, Epps' Amended Complaint has alleged a violation of a clearly established constitutional right. See Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam) (stating that while qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right.").

**B. Epps' Procedural Due Process Claim**

Epps alleged that no hearing was provided to her upon her firing in violation of her constitutional right to procedural due process. Watson asserts that Epps' procedural due process claim fails because her Amended Complaint is devoid of allegations describing a "merit system" promulgated, or even adopted, by the

12

Madison County Tax Commissioner. As a result, Watson asserts, under the heightened pleading requirement, Epps failed to adequately plead a due process violation.

1. Sufficiently Alleged Constitutional Violation

To establish such a claim, the former clerk must show that she had a protected property interest in her employment. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706 (1972). "State law determines whether a public employee has a property interest in his or her job." Warren v. Crawford, 927 F.2d 559, 562 (11th Cir.1991). "Under Georgia law, a public employee generally has no protected property interest unless he or she is employed under a civil service system, which allows termination only for cause." Brett v. Jefferson County, Ga., 123 F.3d 1429, 1433-34 (11th Cir. 1997); see also Ross v. Clayton County, Ga., 173 F.3d 1305, 1307 (11th Cir. 1999) ("Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." (citation and internal quotation omitted)).

Watson contends that while Epps attached the dismissal policy of Madison County to her Amended Complaint, the Tax Commissioner and Madison County are separate political entities and that O.C.G.A. § 47-2-292(a) provides that "[a]ll

tax commissioners . . . and employees in their offices shall be subject to a merit system of personnel administration, as promulgated by each such office . . . ." As a result, Watson asserts that Epps failed to plead or otherwise show that the Madison County personnel policy applies to her employment on the staff of the Tax Commissioner. We disagree.

Epps alleged in paragraph 30 of her Amended Complaint that "Defendant Watson's employees are required to be subject to a merit system of employment; Defendant County has in place a merit system of employment. Defendants' failed to provide the hearing as requested . . . ." R-12, Exh. A at 10. The prior paragraph "places before the court Section 14(4), the dismissal policy of Madison County . . . ." Id. at 9. Madison County personnel policy provides that county employees may be terminated for cause and that such employees are entitled to a hearing prior to termination. Drawing all inferences in favor of Epps, we find that Epps has sufficiently alleged that she was covered by a policy under which she could only be terminated for cause, that is, that the Madison County Tax Commissioner who "unjustly terminated" Epps had adopted the dismissal policy of Madison County.

2. Clearly Established Law

Having sufficiently alleged a protected property interest, it is clearly established that an employee with a protected property interest in continued

14

employment may not be terminated without due process of law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985) (holding that public employee with property interest in continued employment is entitled, prior to termination, "to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story"). As a result, at this stage, Defendant Watson is not entitled to qualified immunity on Epps' procedural due process claim.

## IV. CONCLUSION

Under the alleged facts, a reasonable public official in Tax Commissioner Watson's place could not have believed that firing Epps from her job as a clerk did not violate First Amendment law. As a result, Tax Commissioner Watson is not entitled to dismissal on the basis of qualified immunity with respect to Epps' First Amendment claim at this stage of the case. Moreover, the Amended Complaint states a cause of action sufficient to withstand a 12(b)(6) motion regarding Epps' procedural due process claim. We therefore AFFIRM the district court's order denying Louise Watson's motion to dismiss these claims based on qualified immunity.

EDMONDSON, Chief Judge, **CONCURS** in the result.