MARTIN, Circuit Judge,
dissenting:
I respectfully dissent. The majority makes a significant mistake when it comes to answering a crucial question about how to apply the Supreme Court’s decisions in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).[1] That question is, in determining whether political loyalty is an appropriate requirement for the effective performance of a position held by a public employee — such that the employee can be terminated without violating the First Amendment — are the specific facts regarding the employee’s actual job duties relevant? The majority here says that they are not. See Majority Op. at 1345-46. Rather, the majority claims, the only thing that needs to be examined is the Georgia statute that contains the formal job description for all deputy clerks in the state. See id.
Our precedent does not support the majority’s conclusion that the inquiry is such a narrow and purely legal one. Indeed, in Stegmaier v. Trammell, 597 F.2d 1027 (5th Cir.1979), the former Fifth Circuit squarely held that whether a public employee holds a position from which she can be lawfully dismissed under Elrod is a “question of fact” that must be resolved in light of the specific evidence that is presented in a given case. Id. at 1034 & n. 8.[2] Further, “whether a particular public employee [can be lawfully terminated] can be answered only by analyzing the nature of [that] employee’s responsibilities.” Id. at 1035. This means that both “[t]he inherent powers and [the] actual job responsibilities of the position involved ... should be part of the analysis.” Parrish v. Nikolits, 86 F.3d 1088, 1093 (11th Cir.1996) (emphasis added).[3]
I recognize that not all of our prior cases have been clear or consistent on this issue. See, e.g., Cutcliffe v. Cochran, 117 F.3d 1353, 1358 (11th Cir.1997) (construing our opinion in Terry v. Cook, 866 F.2d 373 (11th Cir.1989), to preclude a factual determination into the actual job responsibilities of deputy sheriffs in Florida). But the appropriate response to this is to apply our prior precedent rule and adhere to the holding of Stegmaier. See Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir.2003) (noting that, under our prior precedent rule, we look to the earliest relevant case in order to resolve a conflict *1347 among our decisions). The majority here fails to abide by this basic requirement.
I am also concerned that the majority opinion is not consistent with the thrust of Supreme Court precedent. I realize that, following Elrod and Branti, the Supreme Court has not had the chance to address the specific question presented by Ms. Underwood’s case, and our sister circuits have adopted sharply conflicting views. Compare, e.g., Jantzen v. Hawkins, 188 F.3d 1247, 1253 & n. 1 (10th Cir.1999) (holding that the inquiry “must focus on the inherent powers of the positions and the actual duties performed”), and Horton v. Taylor, 767 F.2d 471, 477 (8th Cir.1985) (“The Branti test is a functional one, focusing on the actual duties an employee performs.”), with, e.g., Nader v. Blair, 549 F.3d 953, 961 (4th Cir.2008) (declining to examine “the actual duties” performed and focusing on the job description only), and Gordon v. County of Rockland, 110 F.3d 886, 888 (2d Cir.1997) (holding that the focus is on “the written job description” and not “the duties actually performed”).
But the Supreme Court’s decision in Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), casts doubt on the approach taken by the majority today. In Garcetti, the Supreme Court rejected “the suggestion that employers can restrict employees’ rights by creating excessively broad job descriptions.” Id. at 424,126 S.Ct. at 1961. In view of that, the Court established that “[t]he proper inquiry is a practical one.” Id. The reason for this is obvious. “Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.” Id. at 424-25, 126 S.Ct. at 1962. Thus, while the formal job description might support a particular rationale for restricting an employee’s First Amendment rights, the scope of her actual job might not do so. Relying on the formal job description can therefore result in the excessive restriction of an employee’s constitutional rights.
Unfortunately for Ms. Underwood, her case illustrates this danger perfectly. The record here underscores a vast gulf between what is formally provided under Georgia law and what is the reality on the ground.[4] The Georgia statutes state that deputy clerks have the “same” powers and duties as the clerk herself. O.C.G.A. § 15 — 6—59(b). However, this was not the reality for the deputy clerks serving under Mr. Tucker. See Majority Op. at 1345. Nor is this the reality for the deputy clerks serving under Ms. Harkins. Indeed, in her deposition, Ms. Harkins conceded that her deputy clerks have little discretion in their job and instead are required to follow specific instructions to execute limited, well-defined tasks. See Doc. 39 at 83-86. If “there’s any uncertainty” about what to do, she indicated, the deputy clerk must go to her to obtain more specific instructions. Id. at 85-86.
Thus, the formal job description for the deputy clerks “bear[s] little resemblance” to their actual job. Garcetti 547 U.S. at 425, 126 S.Ct. at 1962. The reality of this case is that the powers and duties of the deputy clerks depart from those set forth in O.C.G.A. § 15 — 6—59(b). Accord Calvert v. Hicks, 510 F.Supp.2d 1164, 1173 (N.D.Ga.2007) (finding, based on the record evidence, that “the roles of Clerk and deputy clerk” in Fulton County “are not *1348 the same,” and that Georgia law only “nominally grants deputy clerks” the same authority as the clerk). At this stage of the litigation, Ms. Underwood has carried her burden of showing that, in her position as deputy clerk, she was a ministerial-level employee responsible for performing “limited and well-defined tasks.” Id.
This is significant because binding precedent tells us that, insofar as such an employee exercises her First Amendment rights during an election, the governmental interest in political loyalty cannot justify her termination in the aftermath.[5] Indeed, under Elrod and Branti, the governmental interest in political loyalty can support the discharge of a public employee only if political loyalty is an appropriate requirement for that employee’s job. See Terry, 866 F.2d at 378; see also Epps v. Watson, 492 F.3d 1240, 1245 (11th Cir.2007). And political loyalty is not an appropriate requirement for positions that involve “limited objectives and defined duties and [that] do not require those holding them to function as the alter ego of the [elected official] or ensure that the policies and goals of the office are implemented.” Terry, 866 F.2d at 378.[6]
The majority’s decision to rely only on the formal statutory job description of the deputy clerks to uphold Ms. Underwood’s termination has the effect of burdening Ms. Underwood’s First Amendment rights beyond that which the Constitution allows. This is precisely the kind of danger that the Supreme Court warned about in Garceta. See 547 U.S. at 424-25, 126 S.Ct. at 1961-62.
Unlike the majority, I do not think that we can ignore the facts regarding the scope of Ms. Underwood’s actual duties, and in view of those facts, I think Ms. Underwood should be allowed to proceed to trial with her claim. Because the majority refuses to let her do so, I respectfully dissent.

. Elrod, and Branti involved public employees who were discharged because of their political affiliation. See Elrod, 427 U.S. at 349, 96 S.Ct. at 2678 (plurality opinion); see also Branti, 445 U.S. at 508-11, 100 S.Ct. at 1289-91. Our precedent holds that the governmental interest in political loyalty recognized as valid in Elrod and Branti may also justify the discharge of a public employee who fails to support a particular candidate, see Terry v. Cook, 866 F.2d 373, 377 (11th Cir.1989); see also Epps v. Watson, 492 F.3d 1240, 1244-45 (11th Cir.2007), or who decides to run as a candidate herself, see Randall v. Scott, 610 F.3d 701, 713 (11th Cir.2010).

. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

. At least one of our sister circuits has understood Stegmaier to mean that the actual job responsibilities of a public employee are relevant. See Dickeson v. Quarberg, 844 F.2d 1435, 1442 (10th Cir.1988).

. In reviewing the summary judgment ruling, I must look at the record in the light most favorable to Ms. Underwood. See Curves, LLC v. Spalding County, Ga., 685 F.3d 1284, 1289 (11th Cir.2012).

. Of course, "employees may always be discharged for good cause, such as insubordination or poor job performance.” Elrod, 427 U.S. at 366, 96 S.Ct. at 2686 (plurality opinion). However, Ms. Harkins admitted for the purpose of her summary judgment motion that she fired Ms. Underwood because Ms. Underwood chose to exercise her First Amendment right to be a candidate. Majority Op. at 1339.

. In Terry, we clarified that "[although it can be said that each job in [an] office implements the policies of the office,” political loyalty is not an appropriate requirement for positions that involve "limited and defined roles.” 866 F.2d at 378.