[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15903
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00539-JOF


WILLIE D. CARTER,

Plaintiff - Appellant,

versus

DEKALB COUNTY, GEORGIA,
OFFICER BRUCE C. BRUEGGEMAN,
SERGEANT ALBERT L. MITCHUM,
OFFICER BARTIEN T. MOORE,
JAMES D. PADEN,
in their individual and official capacity, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 4, 2013)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Willie D. Carter appeals from the district court's final order granting dismissal to Appellees DeKalb County, Georgia and seven police officers, Officer Bruce Bruggeman, Sergeant Albert Mitchum, Officer Bartien Moore, Detective James Paden, Lieutenant Gregory Vanderpool, Detective Kevin White, and Officer Jason Sawyer.  Carter's complaint alleged that the Appellees violated his constitutional rights when he was taken to DeKalb County Police Department headquarters for questioning after his wife was found dead in his home on July 31, 2011.  On appeal, Carter argues that the district court erred in: (1) dismissing the complaint before allowing Carter to conduct discovery regarding DeKalb County policies, customs and procedures; (2) concluding that the Appellees did not subject Carter to unconstitutional conditions of confinement; and (3) concluding that the Appellees did not falsely imprison Carter with malice or intent and that the Appellees' course of conduct did not intentionally inflict emotional distress on Carter.  After thorough review, we affirm.

We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), taking the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiffs.

2

Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). Dismissal for failure to state a claim under Rule 12(b)(6) is proper if the factual allegations are not enough to raise a right of relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint requires more than labels and conclusions, and more than a formulaic recitation of the elements of a cause of action. Id. The facts alleged in a complaint must "possess enough heft to set forth a plausible entitlement to relief." Edwards, 602 F.3d at 1276 (quotation omitted).

For starters, we agree with the Appellees that Carter's complaint makes numerous general statements regarding the "Defendants" but makes few, if any, distinctions amongst the seven individually-named police officers. In fact, the complaint does not allege that Appellants Bruggeman, Mitchum, Moore or Vanderpool took any action at all. The only action Carter's complaint alleges Detective Paden took is that he went to the hospital to view Mrs. Carter's body and found no evidence of trauma. Since Carter's complaint has not alleged any causes of action against Bruggeman, Mitchum, Moore, Vanderpool or Paden, the district court properly dismissed the allegations against them.

Carter says, nevertheless, that he should have had an opportunity to conduct discovery to uncover the actions each police officer took that day. As the Supreme Court has noted, however, "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678-

3

79 (2009).  Rather, discovery follows "the filing of a well-pleaded complaint.  It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim."  Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997) (quotation omitted).  As we've explained, "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins.  Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."  Id. (footnote omitted).  "Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion."  Id.; Horsley v. Feldt, 304 F.3d 1125, 1131 n.2 (11th Cir. 2002); see also Epps v. Watson, 492 F.3d 1240, 1243 (11th Cir. 2007) ("Within the context of a Rule 12(b)(6) motion, . . . the well-pleaded factual allegations in the plaintiff's complaint are the focus of the determinations.").

This is especially true in a case like this, involving the qualified immunity doctrine, which gives "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation omitted).  Because qualified immunity is a defense not only from liability, but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense

4

as early in the lawsuit as possible." Id. (quotation omitted).  Thus, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Epps, 492 F.3d at 1243.

Alternatively, Carter claims that he should have been allowed to re-plead his complaint.  However, we've held that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend [ ]or requested leave to amend before the district court." Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc).  Here, Carter was represented by counsel but did not move for leave to amend, see United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303 (11th Cir. 2010), nor has Carter indicated, even on appeal to this Court, what precisely his amended complaint would reveal. See DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1303 (11th Cir. 2008). Thus, we cannot conclude that the district court abused its discretion by failing to grant leave that was never requested.

Next, we reject Carter's claim that the district court improperly dismissed the complaint before allowing Carter to conduct discovery about DeKalb County policies, customs and procedures.  A local government body can be held liable

5

under 42 U.S.C. § 1983 "when execution of a government's policy or custom . . . inflicts the injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). In order to demonstrate governmental liability, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005). A threshold identification of a custom or policy should initially be made. McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004). There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority. Cuesta v. School Bd. of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

Here, Carter's complaint does not allege that any pattern, practice or custom of DeKalb County has caused him harm. Instead, Carter argues that he should have had the opportunity to conduct discovery to determine the customs, patterns and practices of DeKalb County and the individual defendants concerning the treatment of detainees being interrogated. As we've already said, however, discovery follows a well-pleaded complaint; not the other way around. Because Carter's complaint does not allege any unconstitutional policy or custom, the court did not err in dismissing Carter's municipal liability claim against the County.

6

We also are unpersuaded by Carter's argument that the district court erred in dismissing his conditions-of-confinement claim.  To survive a motion to dismiss based upon qualified immunity, a plaintiff must allege sufficient facts to support a finding of a constitutional violation of a clearly established right.  Chandler v. Sec. of Fla. Dep't of Trans., 695 F.3d 1194, 1198-99 (11th Cir. 2012).  The right must be clear enough that any reasonable officer "would understand that what he is doing violates that right."  Morton v. Kirkwood, 707 F.3d 1276, 1282 (11th Cir. 2013) (quotations omitted).

Claims involving the mistreatment of arrestees in custody "are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."  Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  Regardless, the minimum standard under the Due Process Clause for pretrial detainees' basic necessities -- including food, living space, and medical care -- is the same as that allowed by the Eighth Amendment for convicted persons.  Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).  A plaintiff must show "a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind."  Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quotation omitted).  A claim for an

unconstitutional condition of confinement requires extreme deprivations.  Id.; see also Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health" (quotation omitted)).  The risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Chandler, 379 F.3d at 1290 (quotation omitted).

In this case, Carter complains about the treatment he received when he was taken to police headquarters after his wife was found dead in his home.  He claims that he was questioned even though his son had told police that Mrs. Carter had simply fallen on the stairs; however, the son's statement, which was attached to the complaint, also reports that prior to the fall, the son heard the couple "fussing" and "yelling at" each other, and it is unclear whether the son had seen the fight.  Carter further alleges that during the three-hour period he was at police headquarters (from 1:42 p.m. until 4:52 p.m.), the officers refused to take him to the restroom and he urinated in his clothes.  Carter then says that he was allowed to remove his pants, but still had to sit in his underpants.  Carter also alleges that he was denied his food and water requests during the three-hour period, and became "acutely ill" to the point an ambulance was called and took him to the hospital.

Carter has not cited to any cases addressing whether a constitutional violation is stated when an arrestee is not permitted to use the toilet or given food

8

or water during a three-hour period.  He could, of course, still show the violation of a clearly established right by describing conduct "so far beyond the hazy border between" acceptable and unacceptable conditions the official had to know he was violating the Constitution even without caselaw on point.  Morton, 707 F.3d at 1282 (quotation omitted).  So, for example, in Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court found a clear Eighth Amendment violation when corrections officers handcuffed an inmate to a hitching post for seven hours in the hot sun without a bathroom break, all the while taunting the inmate about his thirst. The Court noted that despite the absence of any emergency, the officers knowingly subjected the inmate to a substantial risk of physical harm and to unnecessary pain.

This case is nothing like Hope.  At most, Carter alleges that he had to sit inside, in wet underpants, without food or drink for a few hours while the police questioned him -- after the police received a statement that Carter and his wife had been fighting before she fell.  He does not explain why he ended up going to the hospital, nor does he say that he was denied medical help when he needed it. Moreover, unlike the inmate's situation in Hope, Carter was undergoing police interrogation, which we've said, "is theoretically undertaken for the public good in the first instance."  Tinker v. Beasley, 429 F.3d 1324, 1331 (11th Cir. 2005). Therefore, we cannot say that Carter has alleged any "extreme" conditions that

9

pose "an unreasonable risk of serious damage to his future health." Chandler, 379 F.3d at 1289-90 (quotation omitted). This claim fails.

We are likewise unconvinced by Carter's claim that he was "tricked" into signing a Miranda waiver. Miranda v. Arizona, 384 U.S. 436 (1966), established procedural safeguards concerning the rights of an accused to be free from compelled self-incrimination during custodial interrogation. In Chavez v. Martinez, four members of the Supreme Court held that a § 1983 plaintiff who had been interviewed for a crime but never given Miranda warnings and never charged with a crime stated no Fifth Amendment violation because he was never prosecuted for the crime nor compelled to be a witness against himself in a criminal proceeding. 538 U.S. 760, 764, 766-67 (2003). Justice Souter constituted a fifth vote for holding that the claim would need to be remanded to determine the merits of whether the suspect could state a claim for substantive due process under the Fourteenth Amendment. Id. at 780.

In Tinker, we held that a substantive due process violation occurs during an involuntary confession only if "the specific conduct alleged rises to a level of coercive interrogation that 'shocks the conscience.'" 429 F.3d at 1327. Conduct "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 1328. But "only the most egregious official conduct will be the sort of abusive executive

10

action that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim." Id. (quotation omitted). We noted that "conscience shocking" circumstances included police directing an emergency room doctor to extract against a suspect's will his stomach contents which included heroine-filled capsules. Id. at 1327. We concluded, however, that police conduct of falsely informing a suspect that her attorney had "abandoned" her and convincing her to sign a waiver of rights form and interrogating her multiple times over three days did not shock the conscience. Id. at 1329.

As we've noted, this case involves a suspect who was questioned for three hours after police obtained a report that he and the victim had been fighting prior to a fatal fall. And while Carter alleges that Detective White promised to take Carter to the hospital to see his wife in exchange for a Miranda waiver, it is not clear from the complaint whether the detective maintained that she was alive. Nor, furthermore, does the complaint allege that Detective White knew during the interrogation that there was no trauma to Mrs. Carter's body, since Carter says that another detective inspected the body. Given the circumstances of the interrogation and the lack of allegations revealing that the officer's conduct was deceitful, we cannot say the conduct alleged rose "to a level of coercive interrogation that 'shocks the conscience.'" Tinker, 429 F.3d at 1328. Therefore, we conclude that the district court did not err in dismissing Carter's Miranda claim.

11

Finally, we find no error in the district court's dismissal of Carter's state-law claims. Georgia's doctrine of official immunity provides that a public officer or employee in his individual capacity may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure. Grammens v. Dollar, 697 S.E.2d 775, 777 (Ga. 2010). Malice for official immunity purposes is defined as "'express malice or malice in fact.'" Merrow v. Hawkins, 467 S.E.2d 336, 338 (Ga. 1996). Willful and wanton misconduct is "conduct 'such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent.'" Truelove v. Wilson, 159 Ga. App. 906, 908 (1981) (quotation omitted).

Here, Carter's complaint does not allege that any of the officers acted with express malice, malice-in-fact or with intent to injure him. Nor has Carter connected any action made by any of the seven individually-named defendants to an injury that would be considered a willful intention to inflict harm. He argues on appeal that malice can be inferred from the conditions of confinement and trickery allegations he made. Yet, as we've described above, Carter's allegations fail to describe blatantly deceitful conduct, much less actual malice or an intent to injure. Because Carter has not alleged that any of the Appellees acted with actual malice or intent to cause injury, we affirm the district court's grant of  the Appellees'

12

motion to dismiss Carter's state-law false imprisonment and intentional infliction of emotional distress claims.

**AFFIRMED.**