[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15513
Non-Argument Calendar

_____

D. C. Docket No. 06-00949-CV-J-25-HTS

DONALD P. SANDS, JR.,

Plaintiff-Appellant,

versus

JERRY H. CHEESMAN,
D.M.D.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 16, 2009)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Donald Sands Jr., a Florida prisoner, appeals pro se the summary judgment

in favor of Dr. Jerry Cheesman and against Sands's complaint that Cheesman violated his civil rights under the First and Eighth Amendments. 42 U.S.C. § 1983. The district court ruled that Sands failed to establish that Cheesman was deliberately indifferent to Sands's dental condition, used excessive force during an examination, or retaliated against Sands after he filed a grievance against Cheesman. We affirm.

## I. BACKGROUND

Sands was examined on November 25, 2003, by Cheesman, the dentist for the Columbia Correctional Institution. Sands complained that his gums had been inflamed and three of his teeth felt loose, but those problems had since desisted. Cheesman observed that Sands had periodontal disease and advised Sands to submit an inmate request for a comprehensive dental examination. Cheesman also instructed Sands to request an examination by sick call if he experienced any problems before the comprehensive examination. On December 1, 2003, Sands submitted an inmate request for a comprehensive examination. Five days later, Sands received a notice that stated he had been placed on a waiting list and would receive an appointment in eight to ten months.

In April 2004, Sands submitted a medical grievance form and complained about the wait required to receive a comprehensive examination. Sands requested

immediate dental care because he had been diagnosed in 1999 with periodontitis and had problems related to that condition. Cheesman responded that Sands would receive treatment when his name was reached on the waiting list.

On June 23, 2004, Sands submitted an inmate sick call form that stated he had "severe and at times acute persistent pain" in three teeth and bleeding of his gums. The same day, Cheesman examined Sands. According to Sands, Cheesman "scowled at [Sands] in a hostile and mallicious [sic] manner indicating that he had recognized [Sands] as the inmate who had filed the formal medical grievance[.]" Cheesman asked Sands "in a callous, hostile tone" what his problem was "this time," and when Sands began to list his complaints, Cheesman interrupted to explain that he could treat only one complaint per sick visit, and Sands requested Cheesman examine his front tooth. According to Sands, Cheesman felt his gums and recognized that Sands had a "serious dental health condition"; proceeded to "violently yank[]" on Sands's tooth that caused Sands to cry out; and, while measuring Sands's gums, Cheesman tore gum tissue with a hooked dental instrument. Cheesman accused Sands of trying to circumvent the waiting list; warned Sands that he had 50 percent bone loss and severe periodontitis that would continue to deteriorate because of his dental hygene; and told Sands that he would receive treatment at his comprehensive examination.

3

On June 28, 2004, Sands filed a medical grievance against Cheesman. Sands alleged in the grievance that he had a fever, the gums in the back of his mouth were swollen, discolored, and tender, there was a lump and discoloration in the gums between his front teeth, he had periodontal abscesses, and his teeth were loose. Cheesman responded that Sands's "persistance [sic] in wanting more than one area attended pushed my patience requiring a more stern attitude" and Sands would receive treatment during his comprehensive examination. In June and August, Sands filed three additional medical grievances against Cheesman.

In September 2004, Sands submitted an inmate sick call form in which he complained that the lump between his front teeth had grown and turned purple. That same day, Cheesman examined Sands and diagnosed him with a periodontal abscess. Cheesman prescribed a painkiller and amoxicillin.

In November, Sands received a comprehensive dental examination by Cheesman. According to Sands, Cheesman did not hurt him even though Cheesman used the same instruments and procedures employed during the June examination. Nearly two years elapsed.

In October 2006, Sands filed a complaint in the district court against Cheesman and argued that Cheesman had been deliberately indifferent to Sands's medical needs; used excessive physical force and inflicted pain on Sands during

4

the June examination; and retaliated against Sands for filing prison grievances. Sands alleged that, if Cheesman had conducted a thorough examination in June 2004, Cheesman could have discovered that Sands's front gums were diseased and, because Cheesman waited until the gums became abscessed, the delay caused two of Sands's front teeth to protrude. Sands also alleged that Cheesman inflicted unnecessary pain during the dental examination in June to retaliate for the grievances that Sands had filed against Cheesman.

Cheesman moved for summary judgment. Cheesman argued that Sands failed to establish that he required immediate dental treatment in June 2004 or the delay in treatment caused him harm. Cheesman explained that the dental examination in June was medically necessary; he did not pull Sands's tooth or use a hooked instrument to probe Sands's gums; and he did not intend to cause Sands pain, nor did Sands act as though the examination was painful. Cheesman also argued that Sands could not establish he should have received different treatment because another dentist later recommended the same treatment.

Cheesman attached to his motion two affidavits and Sands's dental records. In one affidavit, Thomas E. Shields, the director of dental services for the Department of Corrections of Florida, stated that Sands's dental records established he had a history of severe periodontitis. Shields opined that Cheesman

5

provided adequate dental care because Sands had failed to request routine dental care both before and after he developed the periodontitis that caused bone loss and, at the June examination, Cheesman could not have impeded the ongoing deterioration. Shields mentioned that Sands never returned to Cheesman or the dental department to report his pain. Shields stated that Cheesman would have used the blunt end of a standard dental instrument to examine the health of Sands's gums.

In a second affidavit, Cheesman stated that he did not observe any decay or abscess when he examined Sands teeth in June. The examination required that Cheesman manipulate Sands's tooth and measure Sands's gums, and Sands did not complain of any pain. According to Cheesman, Sands "became belligerent and demanded that he receive comprehensive periodontal treatment that same day[,]" to which Cheesman responded that Sands did not have an emergency condition that would to allow him to circumvent the waiting list. In September, Cheesman treated Sands's abscess and explained to Sands that his periodontitis with bone loss would eventually cause him to lose teeth. When Sands returned for an examination in January 2005, Cheesman recommended that Sands undergo a regimen of treatment that would require the extraction of three teeth, but Sands later refused the treatment. Sands's dental records established that another dentist who

6

examined Sands at another prison facility recommended the same course of treatment, and Sands again refused treatment. Cheesman also stated that he answered one or two grievances per week, and he understood that prisoners had a right to file grievances and that responding to those grievances was a routine and accepted practice for dentists who serve inmates.

Sands filed a response to Cheesman's motion to which he attached an affidavit and copies of the Health Services Inmate Orientation Handbook. The handbook stated that dental care consisted of emergency services, such as abscesses, urgent non-emergency services treated during sick call, and regular comprehensive care. The book also stated that "Dental clinic personnel will provide you with dental care within Department of Corrections standards and as time permits. The dentist will determine dental priorities. The most serious problems have priority."

The district court granted summary judgment in favor of Cheesman. The district court ruled that Cheesman was not deliberately indifferent to Sands's medical needs. The court found that Sands had "serious medical needs," but that Sands's dental condition was not caused by the allegedly deficient examination in June; Cheesman's treatment could not have arrested the disease or bone loss; and Sands's dissatisfaction was a "claim of medical malpractice" that did "not amount

to a constitutional violation." The district court ruled that Sands received treatment immediately after discovery of the abscess and Sands later received a comprehensive examination. The district court also ruled that Cheesman had not used excessive force and had employed standard practices and equipment during the examination in June, and that neither the use of a periodontal probe or Cheesman's impatient or stern demeanor amounted to cruel and unusual punishment. The district court ruled that Cheesman had not retaliated against Sands for exercising his right to file a grievance. Sands was placed on the waiting list months before he filed a grievance and all inmates faced a standard delay to obtain a comprehensive examination. Cheesman provided Sands routine dental care.

## II. STANDARD OF REVIEW

We review de novo a summary judgment. Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276 (11th Cir. 2001). We construe liberally pro se pleadings, Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006), accept allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

8

## III. DISCUSSION

Sands presents three arguments on appeal. First, Sands argues that Cheesman acted with deliberate indifference when he failed to treat the abscess in Sands's mouth during his sick examination in June. Second, Sands argues that Cheesman used excessive force during that examination. Third, Sands argues that Sands delayed treatment of the abscess and mistreated him during the examination to retaliate for Sands's grievance about the delay for comprehensive care and for his sick visits. These arguments fail.

There is no evidence that Cheesman acted with deliberate indifference to Sands's dental needs. Sands was required to prove he had an objectively serious dental need of which Cheesman was subjectively aware and disregarded that need based on "'conduct that is more than mere negligence.'" Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). Cheesman examined Sands's teeth and gums during the examination in June and found no infection or abscess but, because of Sands's history of severe periodontitis, Cheesman warned Sands to expect his gums and teeth to continue to deteriorate. Although Cheesman expected Sands's condition to worsen, there is no evidence that Cheesman should have anticipated that Sands would develop an abscess and provided preventative care. Cheesman advised

9

Sands that he could return for a sick visit, but Sands failed to avail himself of that service for three months. Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 291 (1976).

There also is no evidence that Cheesman used excessive physical force when he examined Sands during a sick visit in June. Not "every malevolent touch . . . gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9 –10, 112 S. Ct. 995, 1000 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986) (internal quotation marks and citation omitted)). Cheesman examined Sands briefly using standard procedures and instruments to address Sands's complaints about swollen gums and a loose tooth. Although Sands complained of excruciating pain, he did not request from Cheesman or the medical staff any pain medication.

Sands also failed to present evidence that Cheesman retaliated for Sands's protected conduct. Cheesman established that he would have "'taken the same action in the absence of the protected activity.'" Smith v. Mosley, 532 F.3d 1270,

10

1278 (11th Cir. 2008) (quoting <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 399 (6th Cir. 1999)).  Cheesman explained that the manipulation of Sands's tooth and examination of his gums was medically necessary and he saw no signs of an infection or abscess that would require him to expedite Sands's comprehensive visit, and Dr. Shields agreed with Cheesman's conclusions.

## IV. CONCLUSION

The judgment in favor of Cheesman is **AFFIRMED**.