[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11298
Non-Argument Calendar

_____

D.C. Docket No. 5:18-cv-01085-MHH

LEON W. BRADLEY,

Plaintiff - Appellee,

versus

ANA FRANKLIN,
ROBERT WILSON,
BLAKE ROBINSON,
in their official and individual capacities,

Defendants - Appellants,

JUSTIN POWELL,
in their official and individual capacities,
et al.,

Defendants.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama

———————————————

(September 11, 2019)

Before WILSON, DUBINA, and HULL, Circuit Judges.

PER CURIAM:

The defendants appeal the district court's order denying their Federal Rule of Civil Procedure 12(b)6 motion to dismiss. The plaintiff alleges that the defendants, all employees of the Morgan County, Alabama Sheriff's Office, mismanaged public resources, mistreated prisoners, violated ethical obligations, engaged in unlawful hiring practices, and otherwise engaged in activities that could fairly be classified as public corruption. The defendants sought dismissal of all 14 counts, claiming absolute immunity, qualified immunity, and state-agent immunity. The district court denied their motion as to each count. Under the collateral order doctrine, the defendants have appealed the district court's immunity findings. After review, we affirm the district court's memorandum opinion and order.

## I. BACKGROUND

### A. Factual history

2

Because this appeal comes to us in the form of an interlocutory review of a motion to dismiss, we follow the district court's lead and accept the well-pled facts in the complaint as true. Accordingly, we recite and construe the facts in the light most favorable to the plaintiff.

Plaintiff/Appellee Leon W. Bradley ("Bradley") is the former warden of the Morgan County, Alabama jail. Defendant Ana Franklin ("Franklin") is the former Morgan County Sheriff, and defendants Robert Wilson, Blake Robinson, and Justin Powell[1] were all employees of the Sheriff's Office at the time of the pertinent events (collectively, "the defendants"). Bradley alleges that, during his time as the warden, he observed Franklin misuse inmate labor, mistreat inmates, engage in unlawful hiring practices, and misappropriate inmate food money. He also alleges that Franklin siphoned funds intended for inmate food into personal business projects. The other defendants, Franklin alleges, participated in these business ventures with Franklin and received bribes, kickbacks, and other benefits.

Moreover, Bradley alleges that he began communicating these concerns with a blogger who began publicizing these allegations in a blog called "Morgan County Whistleblower." The defendants, undoubtedly displeased with this turn of

---

[1] Powell is not a party to this appeal.

3

events, sought to identify and punish individuals who cooperated with the blogger. To do so, they recruited the blogger's grandson, Daniel Lockhart ("Lockhart,") to install a keylogger on his grandmother's computer.[2] Using the information furnished by the keylogger, combined with allegedly false information the defendants provided to a state circuit judge, the defendants received and executed a search warrant on Bradley's residence. The search exceeded the scope of the warrant. Eleven months later, Bradley was charged with misdemeanor tampering with government records. This charge, however, was later dropped by the same state circuit judge who had previously signed the search warrant. In dismissing the charge, he found that some of the defendants had deliberately misled the court in their efforts to secure a search warrant and had otherwise sought "to hide or cover up their deception and criminal actions." (R. Doc. 35 at 6 n. 4). In October 2016, Franklin fired Bradley.

## B. Procedural history

In July 2018, Bradley filed his 14-count complaint in the U.S. District Court for the Northern District of Alabama. The complaint advanced a host of claims, including RICO violations, constitutional violations, and state law claims presented

---

[2] A keylogger is a form of software installed on a computer that can surreptitiously record the user's keystrokes. For instance, it can intercept messages, passwords, and credit card information.

under supplemental jurisdiction.  He sued the defendants in their individual and official capacities and sought both damages and reinstatement to his position.  The defendants moved to dismiss, arguing that the defendants were entitled to absolute immunity from the state law claims seeking damages under the Alabama Constitution.  They also sought qualified immunity on the constitutional claims, while defendants Wilson, Robinson, and Powell asserted state-agent immunity against the state law claims.  Furthermore, the defendants argued that all conspiracy claims that Bradley advanced were barred by the intracorporate conspiracy doctrine and that five of the 14 counts failed to state a cognizable claim.  They also requested a stay in this action pending the ongoing criminal investigations.

The district court rejected each argument.  Accepting all the facts in the complaint as true for purposes of a Rule 12(b)(6) motion, the district court rejected the absolute immunity claim because Alabama law does not extend absolute immunity to officials when they act outside the scope of their employment, as the defendants appeared to be doing.  The district court also rejected qualified immunity along similar lines, finding that the defendants could not demonstrate that their alleged acts fell within the scope of their discretionary authority as required to receive qualified immunity.  Likewise, the district court found that the

defendants were not entitled to state-agent immunity, which tracks the same analysis as qualified immunity. The district court further denied the defendants immunity under the intracorporate conspiracy doctrine because, although corporations cannot be held liable for conspiracies with their own employees or agents, the doctrine only applies in civil causes of actions that do not arise out of purportedly criminal conduct. Finally, the district court denied the defendants' motion to dismiss five of the 14 counts because the court was satisfied with the specificity of the complaint and because a partial dismissal would not impact the scope of discovery. The court also denied the defendants' motion to stay because discovery had already begun.

## II.    ISSUES

The defendants now present four immunity arguments on interlocutory appeal:

(1)    Whether the district court erred in denying the defendants absolute immunity.

(2)    Whether the district court erred in denying the defendants qualified immunity.

(3)    Whether the district court erred in denying the defendants state-agent immunity.

6

(4)    Whether the defendants are entitled to sovereign immunity

under the Eleventh Amendment.

## III.    STANDARDS OF REVIEW

Defenses of absolute immunity and state-agent immunity are ones based in

Alabama law.  A district court's interpretation of state law is reviewed *de novo*.

*Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1309 (11th Cir. 2007).

The defendants' qualified immunity defense may be addressed in a motion

to dismiss, which will be granted if the "complaint fails to allege the violation of a

clearly established constitutional right." *St. George v. Pinellas Cty.*, 285 F.3d

1334, 1337 (11th Cir. 2002) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th

Cir. 2001)).  This court reviews *de novo* whether the complaint alleges such a

violation, accepting the facts alleged in the complaint as true, drawing all

reasonable inferences in the plaintiff's favor, and limiting its review to the four

corners of the complaint. *Id.*

## IV.    DISCUSSION

Franklin, consistent with the limited jurisdiction we have on an interlocutory

appeal, only challenges the district court's findings as they relate to immunity.  She

argues that the district court erroneously denied absolute immunity, state-agent

immunity, qualified immunity, and Eleventh Amendment immunity for the federal

law claims.  The remaining defendants, as extensions of the sheriff, seek any immunity to which the sheriff is entitled as well as state-agent immunity and qualified immunity for the § 1983 claims.  Finally, they argue that the court lacks subject-matter jurisdiction under the Eleventh Amendment.

A. *Absolute immunity*

The central thrust of the defendants' absolute immunity argument is that any misconduct in the investigation, the execution of the search warrant, and the arrest of Bradley would be within the scope of their employment as sheriff and sheriff's deputies, and therefore, no matter how egregious the alleged misconduct was, they would be covered by the Alabama Constitution's very broad absolute immunity doctrine. ALA. CONST. art. I, § 14.

Although the doctrine is broad, it serves to protect the State, not the individual.  *Ex parte Wilcox Cty. Bd. of Educ.*, 2018 WL 6715940 at *2 (Ala. 2018) ("It is well settled law that the State is generally immune from liability under § 14, Alabama Constitution of 1901.  It is also well settled that the State cannot be sued indirectly by suing an officer in his or her official capacity.").  Therefore, it only protects the sheriff, or her deputies, as individuals when they are sued for damages arising out of the performance of their duties, because such a suit is "essentially a suit against the state."  *Ex parte Walker*, 97 So. 3d 747, 752 (Ala.

8

2012) (quoting *Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987)).  Thus, the dispositive question in this inquiry becomes: Did the alleged misconduct in this case occur within the scope of the defendants' employment as sheriff and sheriff's deputies?

An Alabama statute defines the duties of the sheriff and her deputies which, pertinent to this case, include "ferret[ting] out crime, apprehend[ing] and arrest[ing] criminals and, insofar as within their power, secur[ing] evidence of crimes in their counties and present[ing] a report of the evidence so secured to the district attorney or assistant district attorney for the county."  ALA. CODE § 36-22-3(a)(4) (2011).  The Alabama Supreme Court has further expounded on this "scope of employment" requirement for absolute immunity, explaining that employees act within their scope when their acts are "so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."  *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 180 (Ala. 2016) (quoting PROSSER & KEETON, THE LAW OF TORTS 503 (5th ed. 1984)).

Additionally, the Alabama Supreme Court has hinted that, in addition to five long-recognized exceptions to absolute immunity for granting injunctive relief, that an improper personal motive could change the immunity analysis:

9

> [Plaintiff] does not allege that Deputy Davis's actions were undertaken for some personal motive to further some personal interest and not as a part of his duties as a deputy sheriff. Instead, in his answer to Deputy Davis's mandamus petition, [plaintiff] concedes that Deputy Davis came to his property on March 3, 2003, (during the course of his duties).

*Ex parte Davis*, 930 So. 2d 497, 501 (2005).

According to the defendants, even if their activities were ill-intended, the actions occurred during the course of police investigations, evidence seizures, and the like, such that absolute immunity still applies. This view requires an extraordinarily broad view of absolute immunity that would effectively immunize any conduct when the sheriff flashes his or her badge. The district court correctly rejected this view because Alabama law does not provide such infinite immunity. The allegations in the complaint extend well beyond the negligent mishandling of an investigation or sloppiness in executing a search warrant, or any other number of activities that could fairly advance the objectives of the sheriff, even if the sheriff's actions suffered from procedural defects. Rather, the alleged activities paint a picture of a lengthy conspiracy to defraud the taxpayer, use public funds for personal gain, and punish anyone who threatened to publicize their activities. As the district court noted, the defendants cannot explain how these allegations would fit within the scope of their employment. In terms of *Dolgencorp, LLC*, the defendants' actions are well outside the territory of those that could be

10

characterized as "incidental to . . . the objectives of the employment." *Id.* at 180.

Accordingly, we conclude that the district court properly rejected the defendants'

absolute immunity argument.

B. *Qualified immunity*

The defendants urge us to find that Bradley's Fourth, Fifth, and Fourteenth

Amendment claims are barred under the doctrine of qualified immunity. The

district court rejected this argument, finding that the defendants were unable to

meet their burden of showing that their alleged acts fell within the scope of their

discretionary authority. Rather, Bradley alleged that the defendants had engaged in

extortion to collect information on him, then knowingly violated the law by lying

to a judge to secure a search warrant.

On appeal, the defendants advance two lines of argument. First, they argue

that the district court neglected to use the standard of objective reasonableness to

determine whether the defendants could have believed their actions were lawful

and thus subject to qualified immunity. The district court, they argue, improperly

considered the defendants' malicious intent in denying qualified immunity.

Second, the defendants assert a variety of merits arguments in urging this court to

dismiss certain constitutional claims. This latter category of arguments is more

easily disposed of: Under the collateral order doctrine, we are limited to reviewing

11

orders that "conclusively determine the disputed question," resolve important issues "completely separate from the merits of the action," and are "effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349, 126 S. Ct. 952, 957 (2006) (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684, 688 (1993)). The defendants' merits arguments, which may be subject to a later appeal after the summary judgment stage of these proceedings, are thus unripe for our consideration.

The defendants' former argument similarly misses the mark. First, their argument is unworkable in practice. If qualified immunity applies to these allegations, then it is difficult to envision any limiting principle, similar to the problem noted in the absolute immunity analysis, where any malfeasance does not receive immunity owing to the presence of a sheriff's badge. Second, the defendants fail to explain how the test of objective reasonableness alters the outcome. Qualified immunity is designed to protect officials engaged in their discretionary duties when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. As the district court noted, this explains why the doctrine is alternatively referred to as "good faith" immunity. However, it "does not offer protection if an official

12

knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Melton v. Abston*, 841 F.3d 1207, 1220–21 (11th Cir. 2016) (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003)).  This standard accounts for the fact that an official is not entitled to immunity even when acting in the course of her job duties when the conduct unambiguously violates a plaintiff's constitutional rights.

It is harder to think of a better example of knowingly violating a plaintiff's constitutional rights than the allegation, which we are bound to accept as true, that the defendants facilitated the installation of an unauthorized keylogger on Bradley's computer, misled a judge to secure an invalid search warrant, then raided Bradley's home.  Said another way, these allegations are the antithesis of the type for which one might be entitled to "good faith" immunity.  As such, the district court properly denied qualified immunity to the defendants.

C. *State-agent immunity*

Defendants Wilson, Robinson, and Powell next urge this court to reverse the district court's findings with regard to state-agent immunity.  State agent immunity follows a parallel analysis as federal qualified immunity.  Thus, for the same reasons it denied qualified immunity, the district court also denied state-agent

13

immunity.  On appeal, these defendants have advanced no new arguments explaining how the district court erred in denying them state-agent immunity.  The district court found that Bradley's allegations placed the defendants outside the scope of their employment.  With the benefit of the *Dolgencorp, LLC* standard, quoted *supra*, we agree that the district court correctly denied state-agent immunity to these defendants.

Franklin, for her part, advances a two-part appeal in this respect.  She seeks both state-agent immunity, as her former subordinates did, and she seeks state-law discretionary-function immunity.  Though stylistically different – state-agent immunity arises out of common law, while discretionary-function immunity arises from statute – both require determining whether the officer was acting within the scope of her discretionary duties.  *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir. 2010); ALA. CODE § 6-5-338(a) (1994).  Thus, for the same reasons discussed above, Franklin's appeal fails as well.

Assuming, *arguendo*, that Franklin could prevail on the merits, her argument comes too late.  She never raised this defense in her motion to dismiss, nor did the district court consider it.  Accordingly, this argument is waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (noting that this court has repeatedly held that "an issue not raised in the district court and raised for the

14

first time in an appeal will not be considered by this court") (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)).

D. *Eleventh Amendment immunity*

Finally, the defendants argue that they are partially protected by Eleventh Amendment sovereign immunity. Under the *Pennhurst* doctrine, federal courts have no jurisdiction over states, or jurisdiction over official-capacity claims against state officials, when those defendants are accused of violating state law and the relief sought will have an impact directly on the state itself. *See generally Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900 (1984).

Franklin failed to raise this argument in her motion to dismiss. (R. Doc. 9.) The deputy-defendants raised it in the district court, albeit very briefly. (R. Doc. 8 at 15.) This defense, however, presents a potential jurisdictional bar, and thus is not subject to waiver. *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S. Ct. 1347, 1363 (1974).

For whatever reason, the district court did not address this argument in its order. Because of this, we decline to address this argument in the first instance. On this interlocutory appeal, we are only permitted to address limited issues under the collateral order doctrine because we lack a final judgment as normally required under 28 U.S.C. § 1291. Under this doctrine, we use a three-part test to determine

15

the propriety of deciding questions on interlocutory appeal: first, the district court's order must conclusively determine the disputed question; second, the order must resolve an important issue completely separate from the merits of the action; third, the resolution must be effectively unreviewable on appeal from a final judgment. *Plaintiff A v. Schair*, 744 F.3d 1247, 1253 (11th Cir. 2014).

In this case, the shortcoming is obvious: The district court never made a finding regarding Eleventh Amendment immunity.  Because of this, we presently lack the necessary jurisdiction under the collateral order doctrine to adjudicate this final argument and defer to a future ruling from the district court after remand.

## V.    CONCLUSION

Accordingly, we affirm the district court's order denying the defendants' motion to dismiss on absolute immunity, qualified immunity, and state-agent immunity.  We decline to address the Eleventh Amendment immunity argument and remand that issue to the district court to decide in the first instance.

AFFIRMED and REMANDED.

16